**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| SANDRA DRAKE and RANDY SMITH, on behalf of themselves and others similarly situated, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>STEAK N SHAKE OPERATIONS, INC. )<br>(an Indiana Corporation) )<br>)<br>Defendant. ) | Case no.: 4:14-cv-1535 |

## **PLAINTIFFS' TRIAL PLAN**

COME NOW the Plaintiffs, by and through their counsel of record, and hereby submit the following trial plan requested by this Court.

| | |
|---|---|
| Estimated days for trial: | 2-3 weeks from *voir dire* through second bifurcated phase for damages. |
| Number of Plaintiff's Witnesses: | Two Plaintiffs, 5-7 class members, one corporate representative from SnS, and Dr. Liesl Fox expert witness on damages if second phase is needed. |

### I.   Introduction

Collective and class actions are often tried before juries based on representative testimony for both liability and damages. A case from an Iowa federal court ended up in the U.S. Supreme Court verifying that both FLSA collective actions and Rule 23 claims can be based on representative testimony. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016). "Because a representative sample may be the only feasible way to estabish liability, it cannot be deemed improper merely because the claim is brought on behalf of a class." *Id.* at 1040.

1

In the Spring of 2013, counsel for Plaintiffs in this case held a four week jury trial regarding an FLSA collective class action consisting of over 300 assitant branch managers working for RBS Citizens Bank.  *Bell, et al. v. Citizens Financial Group, Inc. et al.*, E.D.Pa. case no: 10-cv-0320-GLL.  Like the matter at hand, this case involved an alleged misclassification and failure to pay overtime.  The *Bell* plaintiffs presented testimony and evidence through their named Plaintiff and ten other representative witnesses.  This testimony covered the prima facie elements of their claim (due to stipulations, they had to only present testimony regarding working overtime and not being paid for it).  In addition to presenting evidence supporting their prima facie claim, the testifying representative Plaintiffs also presented evidence regarding their primary job duties and work responsibilities to address the affirmative defenses to overtime pay being asserted by the defendant. The claimed defenses in that trial were the same as those asserted by SNS here (the Executive and Administrative Exemptions).  Of course, the defendant was permitted to cross-examine these witnesses on the same topics at that time and later present additional evidence in its prima facie case.  This case was bifurcated for damages.  Had the jury returned a liability verdict, then that same jury would next hear from Plaintiff's expert witness on class damages.

Attached hereto as an example (**Exhibit A**), are the jury instructions submitted by the court in the *Bell* matter.  While Plaintiffs asserted several objections regarding these instructions, and by no means agree the same should be presented here, they do reflect the ability to try and present a significanly large collective action to a jury based on representative testimony.

II.    **Background**

The Plaintiffs Sandra Drake and Randy Smith worked as Managers for the Defendant Steak N Shake Operations, Inc. ("SnS") at various restuarants in the St. Louis metropolitan area. Managers are classified as exempt from overtime pay by defendant under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and Missouri's wage and hour laws, Mo.Rev.Stat. § 290.500, *et seq* ("MMWL"). On December 17, 2015, the Court granted the parties stipulation under § 216(b) for a collective class of Managers who worked for the defendant in its St. Louis Group Market (Doc. 39). Court approved notice was sent to this class along with a consent to become a party plaintiff form. Currently, including the two named Plaintiffs, the FLSA collective class consists of 46 persons. The Plaintiffs are also seeking Rule 23 class certification under MMWL for all Managers who worked at any Missouri restaurant from September 8, 2012 to the present (*i.e.,* two years from the date of filing). From the data provided, Plaintiffs would estimate that this Missouri class would be composed of 350-400 persons.

### III.   Assumptions

In its order dated January 23, 2017, the Court requests that Plaintiffs submit a trial plan assuming that the 46 collective class Managers in the St. Louis Group Market survive defendant's motion for decertification, and the Managers working in Missouri are granted Rule 23 certification for the MMWL claims. (Doc. 100, ¶ 6). As set forth herein, the existence of these assumptions means Plaintiffs can present their case for liability and damages based on representative testimony.

The Plaintiffs will also assume that defendant has not filed a motion for summary judgement regarding any affirmative defense to overtime under the FLSA or MMWL. Therefore, this Court is allowing a jury to determine whether defendant has overtime

3

liability regarding both classes of employees and to determine the amount of damages for two classes: the 46 person FLSA collective class and the 300+ MMWL Rule 23 class.

### IV.     Bifurcation

Regarding damages, the Plaintiffs propose bifurcation whereby the the jury first makes a finding on liability. *See, e.g. Goldman v. RadioShack Corp.*, No. CIV.A.03-0032, 2005 WL 1155751, at *1 (E.D. Pa. May 13, 2005) ("Rule 42(b) governs a party's request to bifurcate. It states, "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, ... or of any separate issue...."). The decision whether to bifurcate is within the sound discretion of the district court. *Barr Laboratories, Inc. v. Abbott Laboratories,* 978 F.2d 98, 115 (3d Cir.1992). If the jury returns a verdict in favor of the Plaintiffs, then Plaintiffs propose that evidence be presented to that same jury regarding Plaintiffs and class members' damages.

Under the circumstances in this case, there would be two damages figures presented during the second phase of trial: a total damages figure for the two named Plaintiffs and 44 other FLSA collective class members, and another damages figure for the MMWL Rule 23 class (*see* § VII, infra, addressing expert testimony). Distribution of the jury award to the respective classes will paid out on a pro-rated basis to the individual damages set forth in Dr. Fox's reports. For more information regarding presentation of evidence on damages, *see* § V, *infra.*

### V.     Representative Evidence at Trial for Liability:

To establish liability at trial, counsel plans to call as witnesses the two Plaintiffs along with 5-7 other collective class members.[1] As set forth below, this proposed number is sufficient to establish liability and damages under the FLSA and MMWL for the collective and class action claims.

The Eighth Circuit issued the *Tyson* opinion that was addressed by the Supreme Court. While that case pertained to "off-the-clock" work involved in donning and doffing, the court recognized that "a jury applying testimony from named plaintiffs [can] find classwide liability." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 798 (8th Cir. 2014), *aff'd and remanded,* 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016). The Third Circuit also endorsed the use of representative testimony in FLSA trials to determine liability. First, in *Martin v. Selker Brothers, Inc.*, 949 F.2d 1286 (3dCir. 1991), the Court observed: "It is not necessary for every single affected employee to testify in order to prove violations" of the FLSA. *Id.* at 1298 (citing cases). Next, in *Reich v. GatewayPress, Inc.*, 13 F.3d 685 (3d Cir. 1994), the Court observed: "Courts commonly allow representative employees to prove violations with respect to all employees." *Id.* at 701 (citing cases). Other circuits have held the same. *See, e.g., O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) ("it is possible that representative testimony from a subset of plaintiffs could be used to facilitate the presentation of proof of FLSA violations, when such proof would ordinarily be individualized"); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1247, 1279 (11th Cir. 2008) (observing that the "general rule [is] that not all employees have to testify to prove overtime violations").

---

[1] Since the clear majority of SnS restaurants located in the St. Louis Group Market are in Missouri, these 5-7 persons will most likely be from Missouri restaurants.

Outside the circuit courts, numerous district courts have also found representative testimony at trial being sufficient - including the Western District of Missouri. *See Fast v. Applebee's Int'l, Inc.*, 2009 U.S. Dist. LEXIS 66854, *24-26 (W.D. Mo. Aug. 3, 2009) (in denying Defendant's motion to decertify stating that "[a]s to due process concerns, representative testimony is contemplated by the FLSA and [defendant] can defend with representative testimony just as Plaintiffs can seek to prove their claims with representative testimony."); *See also McDonald v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 146116, *19 (D. Kan. Dec. 20, 2011) ("In fact, and as explained above, none of these topics require (and the court will not permit) individualized testimony from each plaintiff and the issues are readily susceptible to representative proof."); *Rodriguez v. Sglc, Inc.*, 2012 U.S. Dist. LEXIS163710, *15 (E.D. Cal. Nov. 15, 2012) ("representative testimony is generally acceptable in FLSA collective actions"); *Mahoney v. Farmers Ins. Exch.*, 2011 U.S. Dist. LEXIS 108744, *34-35 (S.D. Tex. Sept. 22, 2011) (holding that "highly individualized" defenses "can be adequately raised at a trial involving representative testimony"); Ellen C. Kearns, The Fair Labor Standards Act, 2d Ed. (BNA 2010) at 19-172-19-177 ("Through the use of such representative testimony, it is generally recognized that plaintiffs can establish a *prima facie* right to recovery on behalf of non-testifying individuals who were subject to the same illicit pattern or practice").

Consistent with this authority, juries have relied on representative testimony to successfully determine liability in large FLSA collective action trials concerning purportedly "fact intensive" overtime-exempt misclassification claims. Examples include, *inter alia*, *Stillman v. Staples, Inc.*, 2009 U.S. Dist. LEXIS 42247 (May 15, 2009) (denying defendant's post-trial motion arguing that the 13 testifying opt-in

6

plaintiffs that testified are not sufficiently representative of the 342 person collective action); *Henry v. Quicken Loans, Inc.*, 2012 U.S. App. LEXIS 22179 (6th Cir. Oct. 25, 2012) (affirming a defense verdict in which forty individuals testified concerning a collective action of over 400 mortgage bankers); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 (11th Cir. 2008) (affirming verdict after trial in which 7 plaintiffs testified in representative capacity on behalf of 1,424 opt-in plaintiffs). Requiring something other than representative testimony from the class would counteract the recognized advantages of the collective action mechanism. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (observing that collective actions provide "the advantage of lower individual costs to vindicate rights by the pooling of resources" and benefit the judicial system by facilitating the "efficient resolution in one proceeding of common issues of law and fact.").

Several courts have explicitly rejected the notion that employers have a due process right to present individualized defenses through discovery or trial in FLSA collective actions. *See, e.g., Khadera v. ABM Industries Inc.*, 2011 U.S. Dist. LEXIS 152138, *19-20 (W.D. Wash. Dec. 1, 2011) (denying Defendant's motion to decertify, holding that no due process violation occurred even though "Defendants have identified a number of differences in the individual working conditions of various Opt-In Plaintiffs" as "[t]he existence of such discrepancies here does not render collective proceeding unfair or procedurally unsound, and the Court can perceive no basis for Defendants' unsupported assertion that such a proceeding violates due process rights."); *Gentrup v. Renovo Servs., Inc.*, 2010 U.S. Dist. LEXIS 143203, *24-25 (S.D. Ohio Aug. 17, 2010) (holding that "the use of representative discovery does not violate due process" and that Defendants' rights "must be balanced against other important policy

7

considerations, including imposing such burdens on the class as to make collective actions impractical."); *Nelson v. Am. Std., Inc.* 2009 U.S. Dist. LEXIS 113448, *8-10 (E.D. Tex. Dec. 4, 2009) (holding that "there is no due process violation" in the use of representative discovery); *Belcher v. Shoney's, Inc.*, 30 F. Supp. 2d 1010, *1024-25 (M.D. Tenn. 1998) (rejecting Defendant's due process concerns regarding the use of representative discovery). In each of these cases employers argued that the presence of "individualized" issues/defenses provided the right to examine every opt-in to the collective action. The courts all rejected this argument.

## VI.   Plaintiffs' Prima Facie Case

The FLSA requires employers to pay employees "a rate not less than one and one-half times the regular rate at which he is employed" for all hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). The Missouri Minimum Wage Law ("MMWL"), Mo.Stat.Ann. § 290.505, provides that "[n]o employer shall employ any of his employees for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." As previously stated, and argued in § V, *supra*, since it is assumed the Court has denied defendant's motion to decertify the FLSA collective, and granted Plaintiffs' Rule 23 certification, they are permitted to present their prima facie case to a jury through representative testimony and evidence.

To establish a prima facie case for overtime pay under the FLSA or Missouri wage laws, a plaintiff must prove three things:[2] "(1) he was employed by defendant; (2) the work involved interstate activity; and (3) plaintiff performed work for which he was under-compensated." *Drake v. Steak N Shake Operations, Inc.*, No. 4:14-CV-1535-JAR, 2015 WL 4425979, at *2 (E.D. Mo. July 17, 2015) (Ross, J). "Thereafter, employers relying on an exemption to avoid the minimum wage and overtime requirements of the FLSA bear the burden of proof that an exemption applies."[3] *Id.* This trial plan will obviously not address the defendant's proposition of presenting evidence on its affirmative defenses' burdens.[4] However, as stated above, to have the witnesses only appear once at trial, the Plaintiffs plan to present testimony from their representative witnesses addressing their primary job duties and the other applicable elements of the defendant's affirmative defenses.

---

[2] Plaintiffs also set forth herein the ability to meet their prima facie case as described by another court in the W.D. of Missouri.

> To establish a prima facie case for overtime under the FLSA, a plaintiff must prove four things. First, a plaintiff must show the existence of an employment relationship. *Reich v. ConAgra, Inc.,* 987 F.2d 1357, 1360 (8th Cir.1993). Second, a plaintiff must show that she was covered by the FLSA. *Baker v. Stone Cnty., Mo,* 41 F.Supp.2d 965, 978 (W.D.Mo.1999). Third, a plaintiff must establish the defendant's actual or constructive knowledge of overtime hours worked without proper compensation for all hours in excess of forty in one workweek. *Brennan v. Qwest Commc'n Intern., Inc.,* 727 F.Supp.2d 751 (D.Minn.2010); *see also* 29 C.F.R. § 785.11 (including in the definition of work time "work [that is] not requested but suffered or permitted"). Finally, a plaintiff must demonstrate that she was not properly compensated under the Act and must prove the amount of the liability. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946).

*Lochiano v. Compasionate Care, LLC*, No. 10-01089-CV-W-DGK, 2012 WL 4059873, at *2 (W.D. Mo. Sept. 14, 2012).

[3] The MMWL adopts the same affirmative defenses to overtime pay as the FLSA. Mo.Rev.Stat. § 290.505.3. Therefore, the ability to try the collective FLSA class claims and the MMWL claims together under the same jury instructions is not an issue.

[4] In discovery, the defendant has set forth two affirmative defenses under the FLSA regarding overtime pay: the executive and administrative defenses. The plaintiffs plan to move for summary judgment on the administrative defense.

Regarding the first element, in its Answer, the defendant has admitted that Plaintiffs are "employees" covered under the FLSA and Missouri wage and hour laws, and that Plaintiffs worked for them.  (Answer, Doc. 31, ¶¶ 13-14, 21-22).  The collective class members also meet these elements since defendant identified them as their employees when producing the mailing list for the FLSA collective action notice.  Under the second element, the defendant would not admit it is involved in interstate activity, stating it calls for a legal conclusion.  (Answer, Doc. 31, ¶ 9).  This would be a question of law addressed by the Court via a dispositive motion filed by defendant.  Given that SnS operates restuarants in Missouri and Illinois as part of the St. Louis Group Market, and it has hundreds of restaurants located in other states, it is doubtful defendant can disprove this element even if they tried.[5]  Therefore, Plaintiffs believe this will be stipulated to by defendant prior to trial.  And, if not, Plaintiffs will address this issue in a motion in limine.

Regarding the third element, Plaintiffs and other representatve witnesses will present testimony and evidence that they were typically scheduled 50 hours each week, therefore, SnS knew they worked overtime by the very schedules.  They will also testify and present evidence that they often worked well over fifty hours each week, and that

---

[5]  A case involving a restaurant just located in one state reflects how easy this element is met.

> Here, plaintiff worked for defendant at the Restaurant. The Restaurant ordered and received supplies from other states or that had traveled through interstate commerce, and employees including plaintiff handled those supplies. Furthermore, at all times relevant to this action, the gross annual volume of sales made by the Restaurant exceeded $500,000. Therefore, plaintiff was engaged in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

*Flores v. Rababeh*, No. 1:15CV1415, 2016 WL 3766469, at *4 (E.D. Va. June 15, 2016*), report and recommendation adopted sub nom. Avila Flores v. Rababeh*, No. 1:15CV1415, 2016 WL 3769363 (E.D. Va. July 13, 2016).

management at SnS was aware that they worked over the 50 hours scheduled. They will testify and present evidence that they did not receive overtime pay for hours worked over 40 per week. Indeed, defendant has admitted that Managers such as Plaintiffs and the classes were classified as exempt from overtime pay under the FLSA and Missouri laws, and therefore, not paid overtime. (Answer, Doc. 31, ¶ 19). Plaintiffs will establish the value of their damages through expert testimony (*see* section VII, *infra,* discussing damages).

### VII.   Representative  Evidence on Damages

Since this case is certified under § 216(b) of the FLSA and Rule 23, the damages on behalf of these classes can also be presented on a representative basis. The named Plaintiffs Drake and Smith, along with the other representative witnesses called, will be able to provide testimony on behalf of the class regarding the allegation that they worked overtime without receiving overtime pay. Since SnS failed to record their actual hours worked, these witnesses' testimony on actual hours worked is sufficient for a jury to draw a reasonable inference on the damages.

Plaintiffs have retained expert witness Dr. Liesl Fox, PhD. Regarding the named plaintiffs and FLSA collective class, Dr. Fox has taken the payroll data provided by SnS, along with each person's statement of estimated actual hours worked that were provided in defendant's questionnaire form, and calculated each class member's lost overtime pay. Therefore, the FLSA collective class has damages calculated for each individual person that will be based on testimony at trial and sworn answers to questionnaires. Attached hereto is Dr. Fox's report reflecting her methodology.[6] (**Exhibit B**). The

---

[6] Dr. Fox's report is not finalized regarding the FLSA collective class because the Plaintiffs are still awaiting updated and accurate payroll data in electronic form for the opt in plaintiffs: Arndt, Combs, Holtzeu, and Frost. Once this data is received, an updated report will be provided to Defendants. Also,

methodology used by Dr. Fox has survived a thorough attack under *Daubert*. *See Childress v. Ozark Delivery of Missouri L.L.C.*, No. 6:09-CV-03133-MDH, 2014 WL 7181038 (W.D. Mo. Dec. 16, 2014). Again, there are two classes of damages to be addressed in the second phase.

Regarding the FLSA collective class, Dr. Fox has calculated damages including both two and three-year statute of limitations for the 46 Managers. The jury typically decides "willfulness" of the defendant's conduct permitting the application of the three-year statute of limitations. *Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1081 (D. Minn. 2015) ("Unlike the willfulness of the employer's violation of the FLSA for statute of limitations purposes, which is a question of fact committed to the jury, the employer's good faith is for the Court to decide."). If the jury finds in Plaintiffs' favor on liability, they can also issue a separate finding regarding "willfulness" in the first phase of the bifurcated trial. How they find on "willfulness" will in turn affect the testimony on damage amounts from Dr. Fox in the second phase of trial. Regarding liquidated damages, the Court will typically decide whether defendant has a "good faith" defense after trial and verdict. *Id.* If Defendant fails it's "good faith" requirement under the FLSA, then the Court can add the liquidated damages to the judgment.

Since the Rule 23 MMWL class has not been certified, no pay data for that class has been produced. If certified, Dr. Fox will poll a statistically significant sampling of the class to determine hours worked over 40 each week. From this data, she will apply a median number of hours worked to the non-polled class members. This type of sampling to establish damages has been approved in the past. In particular, in

---

this report reflects Lanser as a class member. He will be removed from the report since he has been dismissed.

*Childress*, the court upheld Dr. Fox using testimony from a significant sampling of the class regarding hours worked off-the-clock to assign a mean value to those not polled. 2014 WL 7181038, at *4 (citing *Johnson v. Big Lots Stores, Inc.,* No. CIV.A. 04–3201, 2008 WL 1930681, at *8 (E.D.La. Apr.29, 2008) (upholding expert testimony based on survey responses of approximately 60% of members); *Donovan v. Williams Oil Co.,* 717 F.2d 503, 505 (10th Cir.1983) (upholding expert opinion based on testimony of 19 employees to support conclusion regarding 34 employees)). As the U.S. Supreme Court in *Tyson* held, using a representative sampling to fill an evidentiary gap created by the employer's failure to keep adequate records is permissible. 136 S.Ct. at 1040.

From there, Dr. Fox will calculate those class member's individual damages based on the same methodology in her current report. Another report regarding the class damages for Missouri Managers under the MMWL claim will then be prepared. These damages would apply to the Missouri class members who are not part of the FLSA collective class. In other words, the FLSA collective members cannot collect damages twice for the same violation. *See e.g. Pinzon v. Paul Lent Mech. Sys. Inc.*, 11 Civ. 3384 (DRH) (WDW), 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012), adopted by 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012) (the plaintiff may "not double dip" or obtain a "double recovery" of unpaid overtime wages under the FLSA and the NYLL). Under the MMWL, the statute of limitations is set at two years from the date of filing, and liquidated damages are automatically awarded and added to the judgement by the Court. *See* Mo.Rev.Stat. § 290.527.

Regarding both classes of damages, SnS's failure to record hours worked cannot be to their benefit when attempting to attack the ability of Managers to present this representative evidence at trial regarding damages. In *Anderson v. Mt. Clemens Pottery*

13

*Co.*, 328 U.S. 680, 687-88 (1946), a group of employees alleged that their employer's time clocks failed to record all compensable time that they worked. In determining whether the employees proffered sufficient proof of damages, the Supreme Court wrote:

> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution [to an employer's lack of accurate time records] is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the [FLSA]. In such a situation we hold that an employee has carried out his burden if ***he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference***. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson*, 328 U.S. 680, 687-88 (1946) (emphasis supplied).

Regarding damages, representative testimony presented in the first phase of trial, along with any representative evidence present in Dr. Fox's reports, will be sufficient to establish damages for both classes. Based on *Mt. Clemens*, the Third Circuit has held that "[i]t is not necessary for every single affected employee to testify in order to . . . to recoup back wages. The testimony and evidence of representative employees may establish prima facie proof of a pattern and practice of FLSA violations." *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1298 (3d Cir. 1991). The Third Circuit reiterated this holding three years later in *Reich v. Gateway Press*, 13 F.3d 685, 702 (3d Cir. 1994):

14

"Thus, not all employees need to testify in order to prove the violations or to recoup back wages."

> It is not necessary for the finder of fact assess the credibility of each plaintiff individually as to how much, if any, uncompensated overtime he or she worked. . . . Defendants' other purported defenses are in effect other ways of asserting that the finder off act must assess each plaintiff's credibility. . . The Court finds that the use of representative testimony in a collective action will not impair Defendants' ability to effectively raise these issues. ***The plaintiffs who testify will do so in a representative capacity, and the issues Defendants raise concerning the nature and extent of the plaintiffs' alleged uncompensated overtime may be broached with the testifying plaintiffs.*** While it will not afford the same level of forensic specificity as cross examination of each plaintiff individually, a collective action under § 216(b) is not held to the same rigors as either a typical lawsuit or a class action under Rule 23 precisely because the FLSA contemplates that representative testimony may be used to adjudicate the claims of nontestifying plaintiffs and thereby arrive at an approximation of damages.

*Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 995-96 (W.D. Tenn. 2011) (emphasis supplied).

Defendants often argue that they should be able to examine at trial each class member regarding his or her damages. However, appellate courts across the country have similarly held that damages in an FLSA action need not be demonstrated on an individual basis, but can be awarded based on representative testimony. Some examples include: *Reich v. Southern New England Telecomm.*, 121 F.3d 58, 67 (2d Cir. 1997) ("The Secretary's burden in such cases, while not overly onerous, is to establish a *prima facie* case. He is not required to do so in complete detail as to the wages lost by each employee.") (internal citation omitted); *Reich v. Southern Md. Hosp.*, 43 F.3d 949, 951 (4th Cir. 1995) ("The court can award back wages under FLSA to non-testifying employees based on the 'fairly representational' testimony of other employees."); *United States DOL v. Cole Enters.*, 62 F.3d 775, 781 (6th Cir. 1995) ("The testimony of fairly

15

representative employees may be the basis for an award of back wages to nontestifying employees."); *Martin v. Tony & Susan Alamo Found.*, 952 F.2d 1050, 1052 (8th Cir. 1992) ("the district court committed error in rejecting the secretary's proposed judgment for the non-testifying employees that was based on the back pay awards made to the testifying employees."); *McLaughlin v. Seto*, 850 F.2d 586, 589 (9th Cir. 1988) ("We hold that the *Mt. Clemens Pottery* standard allows district courts to award back wages under the FLSA to non-testifying employees based upon the fairly representative testimony of other employees."); *see also Tackas v. Hahn Automotive Corp.*, 1999 U.S. Dist. LEXIS 22146, *4 (S.D.Ohio Jan. 25, 1999) ("Based on *Mt. Clemens Pottery*, courts . . . have uniformly held that damages in an FLSA overtime case can be proved with testimony from a representative group of plaintiffs, and thus, without requiring each plaintiff seeking same to testify.").

## VIII. Conclusion

The Plaintiffs have demonstrated that this case can be tried for both classes at the same time. Plaintiffs have demonstrated that evidence regarding liability and damages can be presented on a representative basis. In fact, undersigned counsel has previously tried to a jury verdict an Executive/Administrative Exemption misclassification case before another federal district court. If this Court has any questions or concerns regarding what is set forth herein, Plaintiffs would be happy to provide additional information and/or authority.

Respectfully submitted,



| | |
|---|---|
| */s/ Brendan J. Donelon*<br>Brendan J. Donelon, MO #43901<br>420 Nichols Road, Suite 200<br>Kansas City, Missouri 64112<br>Tel:    (816) 221-7100<br>Fax:    (816) 709-1044<br>brendan@donelonpc.com | Daniel W. Craig, MO #43883<br>6614 Clayton Rd., #320<br>St. Louis, Missouri 63117<br>Tel:    (314) 297-8385<br>Fax:    (816) 709-1044<br>dan@donelonpc.com<br><br>ATTORNEYS FOR PLAINTIFFS |

## Certificate of Service

Plaintiffs hereby certify that a true and correct copy of the foregoing was sent on <u>March 30, 2017</u> to the following Defense counsel of record email addresses per the requirements of this Courts CM/ECF practices and procedures.

Trish Martin
Andrew C. Johnson
LITTLER MENDELSON, P.C.
One Metropolitan Square
211 North Broadway, Suite 1500
St. Louis, MO 63102
Telephone: 314.659.2000
Facsimile: 314.659.2099
pmartin@littler.com
anjohnson@littler.com

Attorneys for Defendant