**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

SANDRA DRAKE, et al.,     )
            )
  Plaintiffs,      )
            )  Case No. 4:14-cv-01535-JAR
vs.           )
            )
STEAK N SHAKE OPERATIONS, INC., )
            )
  Defendant.      )

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Simply stated, Plaintiffs' Motion for Summary Judgement must be denied in light of this Court's September 28, 2018, Order denying Defendant Steak N Shake Operations, Inc.'s ("Defendant" or "SNS") Motion for Summary Judgment as to Plaintiff Katrina Wolfshoefer. In that Order, this Court noted that (1) "the Court [has already] determined that 'the material aspects of [the class members] employment experiences [were] more alike than different… [and] that Wolfshoefer's experience is not so unlike the other class members' that she is uniquely recognizable as exempt;" and (2) "a genuine issue of material fact [exists] as to what [Wolfshoefer's] primary job duties are such that summary judgment is not appropriate." Doc. No. 239, at pp. 3-4.

Even if this Court were to decide to visit the question anew, as demonstrated in SNS's Response to Plaintiffs' Statement of Uncontroverted Material Facts, a genuine issue of material fact exists as to whether SNS Managers' primary duties are exempt or non-exempt. Certainly, viewing the record evidence as a whole in a light most favorable to SNS, Managers' experiences across the St. Louis Area Market do not all fall in line with the cited testimony and reveal a more nuanced, varied experience for Managers in terms of the level of management and business

1

operational functions entrusted to them by SNS. As such, genuine issues of material fact remain as to whether, under the executive exemption, SNS Managers' primary duties are management, they customarily direct the work of two or more employees, and have authority to hire and fire employees (or significantly influence those decisions). Genuine issues of material fact also remain as to whether, under the administrative exemption, SNS Managers' primary duties are directly related to the management or general business operations of SNS and involve the exercise of discretion and independent judgment relative to matters significant to SNS. The merits of SNS's executive exemption and administrative exemption must be resolved by a jury and this Court should deny Plaintiffs' motion for summary judgment on these exemptions.

## I.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Application of the executive and administrative exemptions are fact-intensive inquiries typically committed to the purview of the fact-finder. *Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421, 427 (8th Cir. 1996).

## II.   ARGUMENTS & AUTHORITIES

### A.    Under the Law-of-the-Case Doctrine, Summary Judgment is Inappropriate

The law-of-the-case doctrine "requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of parties, and promote judicial economy." *Gander Mt. Co. v. Cabela's Inc.*, 540 F.3d 827, 830 (8th Cir. 2008). Under the doctrine, a court's decision in a case should continue governing the same issues in subsequent stages in the same case. *Id.* The Court already held that there was a genuine issue of material fact as to Manager Katrina Wolfshoefer's job duties and whether she met the exemptions

2

such that summary judgment is not appropriate. *See* Doc. No. 239. Yet, the Court also found that Wolfshoefer's employment experience was so similar to the experience of other Managers that she could not be differentiated from other class members. *Id.* According to the law-of-the-case doctrine, if there is a genuine issue of material fact as to Wolfshoefer's job duties and whether she was properly classified as exempt, and her experience was the same as all other Managers, then there is a genuine issue of material fact as to all Managers' job duties and whether they were properly classified as exempt. Therefore, summary judgment is inappropriate and the Court must deny Plaintiffs' motion.

## B.    Plaintiffs' Have Not Demonstrated SNS Managers' "Primary Duty" is Nonexempt Work

Even if the Court believes additional analysis is necessary, Plaintiffs are still not entitled to summary judgment. To analyze both the executive and administrative exemptions, the Court must review what SNS Managers' "primary duty" was at SNS. The Department of Labor (DOL) defines the term "primary duty" as meaning "the principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a). One factor to consider when determining a manager's primary duty is the relative importance of the exempt duties as compared with other duties. *Id.*

Plaintiffs summarily conclude that Managers' most important job duties are the production and service tasks they perform the majority of every day because if such duties – which Plaintiffs call the "lifeblood" of the restaurant and its success – are not performed by Managers, the restaurants will necessarily fail. This is not only gross speculation,[1] but it misconstrues the meaning of the DOL regulations to look at the most important duty the particular employee

---

[1] *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003) (to survive summary judgment, plaintiff must substantiate allegations with more than speculation).

performs. SNS concedes its mission as a restaurant and the most important thing it does as a restaurant as a whole is to provide food and a positive experience to its guests. SNS is in the business of serving guests and producing quality food for those guests. That does not mean everyone working in furtherance of that overall mission is primarily focused on service and production tasks, even if they are very important to the running of the overall restaurant. Rather, many things go into fulfilling SNS's overall mission and each category of employees has duties to make that overall mission a reality. SNS has presented evidence from which a reasonable jury could find the Managers' most important duties are running the store and assisting with operational, personnel, and additional matters that are not expected of the employees beneath them.

**C.      Plaintiffs Are Not Entitled to Summary Judgment on the Executive Exemption**

Plaintiffs are not entitled to summary judgment on SNS's assertion of the executive exemption because genuine issues of material fact exist relative to Managers' primary duty and how it relates to the executive exemption requirements. To determine whether an employee fits within a given FLSA exemption, the Court looks to the appropriate Department of Labor ("DOL") regulation. *Fife v. Bosley*, 100 F.3d 87, 89 (8th Cir. 1996). DOL regulations explain that an exempt "executive" employee is one who:  (1) is compensated on a salary basis of $455 per week; (2) has a primary duty of management; (3) customarily directs the work of two or more employees; and (4) has authority to hire and fire employees, or their suggestions and recommendations as to hiring and firing are given particular weight. 29 C.F.R. § 541.100. Plaintiffs do not dispute satisfaction of factor (1). Genuine issues of material fact exist as to elements (2), (3), and (4).

1.      Fact issues remain regarding Managers' primary duty.

First, a genuine material fact question exists as to whether SNS Managers' work was primarily management-related. Plaintiffs place great emphasis on their claim that Managers do not spend the majority of their time on management-related duties. *See* Doc. #246 p.15. But critically,

time alone is not the only test for an exemption. 29 C.F.R. § 541.700. Employees spending more than 50% of their time on non-exempt work may still meet the primary duty requirement under both of the exemptions; nothing in the regulation requires that exempt employees spend more than 50% of their time performing exempt work. *Id.* Moreover, concurrent performance of exempt and non-exempt work does not disqualify an employee from the executive exemption. 29 C.F.R. § 541.106(a). Where an employee performs concurrent duties of exempt and non-exempt work, whether the executive exemption is satisfied requires "case-by-case" evaluation. *Id.* Exempt executives make the decision regarding when to perform non-exempt duties, and remain responsible for the success or failure of the business operations under their management while performing the non-exempt work. *Id.*; *see also Phillips v. Tacala*, 883 F. Supp. 2d. 1138, 1155 (N.D. Ala. 2012) (restaurant manager who had discretion to decide when it was appropriate to perform exempt vs. non-exempt tasks was exempt); *Buechler v. DavCo Rests., Inc.*, 2009 WL 3833999, *5 (D. Md. Nov. 16, 2009). The regulation explains that an assistant manager who supervises or directs employees at the same time he or she serves customers or stocks shelves is still exempt under the executive exemption. 29 C.F.R. § 541.106.

Again, to determine the relative importance of SNS Managers' managerial versus non-managerial tasks, courts consider the significance of the managerial tasks to the success of the facility, including whether the restaurant could operate successfully unless the manager performed his or her managerial functions. *Buechler*, 2009 WL 3833999, at *4 (D. Md. Nov. 16, 2009). The evidence demonstrates that some Managers testified that while they sometimes worked on stations preparing food or serving customers, they still remained in charge of the restaurant at all times, making management their primary duty. [Defendant's Statement of Additional Uncontroverted Materials Facts ("D SOF") ¶ 43; Defendant's Response to Plaintiffs' Statement of Uncontroverted

Material Facts ("DRPSOF") ¶¶ 15, 26] A Manager simultaneously responsible for working at stations as needed, directing the crew, inventorying supplies, addressing customer complaints, and reporting daily receipts to the corporate office, is essential to the operation of the facility, even though he or she is simultaneously completing managerial and non-managerial tasks. *Id.* at *5; *Palazzolo-Robinson v. Sharis Management Corp.*, 68 F. Supp. 2d 1186, 1190 (W.D. Wash. 1999). [D SOF ¶ 43]

Some Managers have testified that Managers remain in charge of the stores at all times on their shifts – even when they are working stations or performing non-managerial tasks. [D SOF ¶ 43]  As further demonstrated below under the business operational duties of Managers relative to the administrative exemption, the record shows that at all times while on Manager shift, Managers retain responsibilities for reconciling cash drawers, monitoring and ensuring food safety and premises safety, monitoring labor usage against store volume and taking any necessary steps to keep the two in line, directing and coaching employees, assigning side work or cleaning tasks to employees, and addressing and correcting customer complaints. [D SOF ¶¶ 11-15, 20-26, 29] All of these functions are performed by Managers without having to obtain permission from managers above them. [D SOF ¶ 48] SNS has presented testimony that if a Manager is on shift and has issues arise relative to the above areas, a Manager's priority would be to stop the non-managerial task and address the managerial task. [D SOF ¶ 44] Again, Managers are a piece to the puzzle for obtaining the overall successful operation of SNS stores.

As Plaintiffs concede, they *did* perform managerial functions. That they now (self-servingly) argue that those took up only a small amount of time or that they personally did not see them as important is insufficient to prevail on summary judgment. *Cort v. Kum & Go, L.C.*, 923 F. Supp. 2d 1173, 1179 (W.D. Mo. 2013) ("relative importance of exempt duties as compared to

other duties" factor weighs in favor of Defendant where Defendant itself placed greater emphasis on managerial duties than non-managerial duties through job descriptions, performance evaluation criteria, bonus plans, and training to managers). Case law demonstrates that where a fast food manager spends the majority of his or her time performing non-exempt tasks, yet simultaneously supervises and directs other employees, he or she is still exempt. *Id.* at *5; *see also Mims v. Starbucks Corp.*, 2007 WL 10369, at *5 (S.D. Tex. Jan. 2, 2007). Case law also demonstrates that employees can spend up to 90% of their time on non-exempt work and still meet the primary duty requirement if they are still in charge (because management duties are more important to the success of the business than non-exempt duties). *Scott v. SSP Am., Inc.*, 2011 WL 1204406, at *8 (E.D.N.Y. Mar. 29, 2011); *Mims*, 2007 WL 10369 at *5. SNS has shown a genuine issue of material fact remains as to whether the managerial functions performed by Managers are by far their most important functions.

2.   The jury will have to determine whether Managers customarily directed the work of two or more employees.

Second, a genuine material fact question also exists as to whether SNS Managers customarily directed the work of two or more employees. The record demonstrates that Managers nearly always directed the work of two or more employees. [D SOF ¶¶ 1, 45] Whether an employee "customarily and regularly" directs the work of two or more employees means a frequency of "greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. SNS has presented testimony and the record demonstrates some or most Managers were/are scheduled to have at least two employees working under them on any given shift and at all times remained responsible for directing those employees' work. [D SOF ¶¶ 1, 45] The two employees being directed included at least one production (food preparation) employee and one server in the dining room; however, most shifts had more than two hourly employees scheduled to cover

7

production and service. [D SOF ¶¶ 1, 45] This includes assigning stations, assigning additional cleaning or side work, moving employees to different stations if it will benefit the flow of production, redirecting employees when they get off task, correcting or coaching employees on performing their job functions, running staggered breaks for employees, and sending employees home if the restaurant is slow or if their conduct warrants it, among others. [D SOF ¶¶ 23, 26, 28-29, 47] That some of Plaintiffs testified that they did not view their role as "directing" the hourly associates (or otherwise did not perform that role despite it being required of them), further demonstrates there is a factual dispute as to this factor of the executive exemption that precludes summary judgment. Unlike the plaintiffs in *Callari* cited by Plaintiffs, the SNS store is not a place where Managers did not regularly hold the responsibility of directing other employees. 988 F. Supp. 2d 261, 283 (E.D. N.Y. 2013).

3.   The jury will have to determine whether Managers are involved in hiring and firing decisions and whether their suggestions are given weight.

Third, a genuine material fact question exists as to whether SNS managers have authority to hire and fire employees (or, their suggestions and recommendations as to hiring and firing are given particular weight). SNS admits Managers do not generally have authority on their own to hire and fire employees, although there is some testimony that at least one General Manager will delegate such authority to Managers. [D SOF ¶ 38] Nonetheless, the record demonstrates an issue of fact remains as to whether Managers have significant influence, particularly over hiring, and whether their recommendations as to both hiring and firing are given particular weight. The DOL has set forth multiple factors to consider when determining whether an employee's suggestions are given "particular weight," including, but not limited to:  whether it is part of the employee's job duties to make such suggestions and recommendations, the frequency with which such suggestions

or recommendations are made or requested, and the frequency with which the suggestions or recommendations are relied upon. 29 C.F.R. § 541.105.

Contrary to Plaintiffs' assertion, the record is not devoid of facts demonstrating Managers were regularly involved in personnel decisions. Rather, the evidence demonstrates that conducting initial candidate interviews is absolutely a part of Managers' job duties, and hand in hand with that responsibility is the duty of Managers to make suggestions and recommendations on hiring. [D SOF ¶¶ 36-37] Indeed, Managers typically perform the initial interview of candidates and then pass their recommendations on to the General Manager or District Manager. [D SOF ¶ 36] For many Managers, they engage in this process as often as once a week, though the experience among Managers varies. [DRPSOF ¶ 31; D SOF ¶ 52] While some Managers testified their suggestions were not ultimately followed or taken seriously, there is specific Manager testimony that General Managers indeed act on the suggestions or recommendations of Managers who conduct the initial interviews with candidates or allow Managers to make their own hiring decisions. [D SOF ¶¶ 38, 51] Managers also have the authority to perform a kind of gatekeeping function – if the Manager does not believe, based on the initial interview, that the candidate is right for the job, the Manager can decide on his own to immediately stop the interview process rather than pass the candidate on for a second interview. [D SOF ¶ 37] The record further demonstrates an issue of fact as to Managers' influence over firing decisions. SNS has presented testimony that General Managers consult with Managers about their experiences with employees who are at risk of being discharged, or to provide information when they are the highest ranking employee in the store on a given shift where an employee issue arises necessitating termination of employment. [D SOF ¶ 33, 35]

Even when Managers have to adhere to corporate guidelines or obtain upper level management approval for certain decisions, they can still be exempt where they have the discretion

to run the operations of the shift within the established guidelines. *Buechler*, 2009 WL 3833999 at *6; *Mims*, 2007 WL 10369 at *7. The presence of a hierarchical structure does not negate the supervisory nature of work performed at each level of the business. *Scott*, 2011 WL 1204406, at *13. Indeed, SNS has presented evidence from some Managers that while there are policies and corporate guidelines to follow, Managers also exercise discretion in scheduling employees (or running breaks or sending employees home), directing employees' work, handling customer complaints, handling employee complaints, issuing discipline through coaching, verbal warnings, and write-ups, and some even completing performance evaluations. [D SOF ¶¶ 20-22, 26, 28-29, 30, 39, 41, 46, 48]

Accordingly, it should be left to the jury as fact-finder to weigh the Parties' conflicting evidence, testimony, and theories to determine whether SNS Managers' primary duty satisfies the executive exemption. Summary judgment on this ground is improper and the Court should deny Plaintiffs' motion for summary judgment.

### D.   Plaintiffs Are Not Entitled to Summary Judgment on the Administrative Exemption

Plaintiffs also are not entitled to summary judgment on SNS's assertion of the administrative exemption because genuine issues of material fact exist relative to Managers' primary duty and how it relates to the administrative exemption requirements. DOL regulations explain that an exempt "administrative" employee is one who:  (1) is compensated on a salary basis of $455 per week; (2) has a primary duty of performing office or non-manual work directly related to the management or general business operations; and (3) has a primary duty that includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a)(1)-(3). Plaintiffs do not dispute satisfaction of factor (1). Genuine issues of material fact exist as to factors (2) and (3).

1.    <u>Fact issues remain regarding Managers' primary duty.</u>

First, a genuine material fact question exists as to whether SNS Managers have a primary duty of completing office or non-manual work related to the management or general business operations. The phrase "directly related to the management or general business operations" means the work is "directly related to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). The regulation distinguishes administratively exempt employees from, for example, employees working on a manufacturing production line or selling a product in a retail establishment. *Id.* Work that is directly related to management or general business operations includes work in the following (non-exhaustive) functional areas:  accounting and budgeting; quality control; purchasing and procurement; safety and health; and personnel management. *Id.* § 541.201(b).

Contrary to Plaintiffs' assertion, the record evidence demonstrates some Managers do actually perform work related to management and general business operations in the categories outlined above such that a material fact question remains for trial on this factor. For example, relative to accounting and budgeting, some Managers testified to having responsibilities for sending hourly employees home when the store was over its labor budget; reviewing the labor cost management system to evaluate labor costs; conducting inventory checks and counting daily receipts; making sure SNS's cash handling, ticket ringing, and banking procedures are followed; and making bank deposits (including selecting an employee to assist them during the bank deposit). [D SOF ¶¶ 15-19, 25-26, 31] Relative to purchasing and procurement, some Managers have responsibilities for managing order inventory or have authority to order food for the restaurant. [D SOF ¶¶ 31-32] Relative to quality control and safety and health, testimony revealed some Managers have responsibilities for making sure SNS's food production procedures are followed, conducting walk-throughs on every shift, performing temperature checks to ensure food safety and

11

make sure there is no cross-contamination, and otherwise fulfilling safety and security duties above and beyond what hourly employees fulfill. [D SOF ¶¶ 12, 14-15] Relative to personnel management, some Managers have responsibilities for creating employee work schedules; changing employee clock in and out time punches when there are mistakes; conducting performance evaluations; and having involvement in termination, promotion, and hiring processes, including conducting the first interviews of potential new hires and pass on the candidates who meet SNS's Select the Best standards to the General Manager (or in some instances hired someone without the General Manager's approval); or disciplining associates by giving verbal warnings and write-ups. [D SOF ¶¶ 27, 30, 33-39, 41] A reasonable jury could conclude under this testimony that such work is administrative in nature and relates to SNS's business operations.

That Plaintiffs have cherry-picked testimony from some other Managers summarily claiming not to have had responsibilities in the overarching categories of "accounting and budgeting," "quality control," "purchasing and procurement," "safety and health," or "personnel management" is insufficient to warrant summary judgment. Rather, it bolsters the impropriety of summary judgment on this exemption given the above testimony. Plaintiffs also cannot summarily reduce Managers' job duties to "routine, rote manual labor work." *See* Doc. # 246 p. 27. While Managers admittedly work on production and service tasks, they are still in charge of the stores and still have overarching business operational assignments that are not performed by the various categories of employees beneath them in the organizational chain (*i.e.*, hourly production and service employees, operations supervisors, production trainers, or service trainers). [D SOF ¶¶ 43-44]

2.     The jury will have to determine if Managers exercise discretion and
independent judgment.

Second, a genuine material fact question also exists as to whether SNS Managers have a

primary duty that includes the exercise of discretion and independent judgment with respect to

matters of significance. "In general, the exercise of discretion and independent judgment involves

the comparison and the evaluation of possible courses of conduct, and acting or making a decision

after the various possibilities have been considered." 29 C.F.R. § 541.202(a). DOL regulations

instruct that such analysis must be applied in light of all the facts involved in the particular

employment situation. *Id.* § 541.202(b). A non-exhaustive list of factors to consider when

determining whether an employee exercises discretion and independent judgment with respect to

matters of significance include:  whether the employee has authority to *implement* policies or

operating procedures; whether the employee performs work that affects business operations to a

substantial degree, even if the employee's assignment relate to operation of a particular segment

of the business; and whether the employee investigates and resolves matters of significance. *Id.*

(emphasis added).

Contrary to Plaintiffs' assertion that Managers do not exercise meaningful discretion and

independent judgment with respect to anything resembling matters of significance, the evidence

demonstrates there is no matter of more significance to SNS than the guest experience, in which

Managers play a critical role. [D SOF ¶ 50; DRPSOF ¶ 12] As with any guest-centered, service

industry business, SNS places great focus on the guest experience, as guests unhappy with food or

service received may stop patronizing a particular SNS store or all SNS stores, and may influence

friends and family members to do the same. Social media exacerbates and enlarges the impact that

just one unhappy, outspoken guest can have. Obviously, then, guest experience is a matter of

significance to SNS.   *Id.* § 541.202(a) ("matters of significance" references the "level of

13

importance or consequence of the work performed"). To account for this reality, Managers have direct and significant authority to exercise discretion and independent judgment to ensure a positive guest experience. [D SOF ¶¶ 20-23] Indeed, Managers regularly address guest complaints and concerns, and use their best judgment on how to both alleviate the situation at hand and correct the underlying problem going forward. [D SOF ¶¶ 20-23] Managers have discretion to evaluate a range of options and make a decision on the best course of action for a particular guest complaint or concern, including whether SNS should respond by re-making a food order, making a food item or meal free, giving a gift card for a future visit, or even something as simple as giving the guest an apology and a chance to be heard. [D SOF ¶ 21] A Manager's response to guest complaints or concerns may also include employee counseling, coaching, or training to fix an issue going forward. [D SOF ¶ 23] While resolution of each individual guest complaint or concern may not involve a large amount of money for a Manager, the cumulative effect is absolutely significant to SNS.

The record evidence also demonstrates Managers implement company policies and operating procedures. *Id.* § 541.202(b). Several managers testified they do so in labor scheduling and monitoring or deciding when to run breaks and send employees home. [D SOF ¶¶ 25-26, 28, 30] Managers also follow and implement company policies and procedures in managing personnel, for example, in applying progressive discipline policies with employees through verbal warnings or write ups. [D SOF ¶ 39] Still other Managers performed written performance evaluations of employees. [D SOF ¶ 41] There can be no dispute that having a functioning, productive staff at each SNS store is also a matter of significance to SNS. While some Managers testified to having little involvement or authority relative to employee discipline, it is important to note that an employee can exercise discretion and independent judgment even if his decisions and

14

recommendations are reviewed at a higher level. 29 C.F.R. § 541.202(c). As such, even where Managers' employee discipline suggestions are reviewed or approved by a General Manager (or higher), they still fall within the administrative exemption.

The Second Circuit, with respect to Burger King, one of SNS's direct competitors, understood the critical issue here:

> We fully recognize that the economic genius of the Burger King enterprise lies in providing uniform products and service economically in many different locations and that adherence by Assistant Managers to a remarkably detailed routine is critical to commercial success. The exercise of discretion, however, even where circumscribed by prior instruction, is as critical to that success as adherence to "the book." Burger King, of course, seeks to limit likely mistakes in judgment by issuing detailed guidelines, but judgments must still be bade. In the competitive, low margin circumstances of this business, the wrong number of employees, too many or too few supplies on hand, delays in service, the preparation of food which must be thrown away, or an underdirected or undersupervised work force all can make the difference between commercial success and failure.

*Donovan v. Burger King Corp.*, 675 F.2d 516, 521-22 (2d Cir. 1982). The same is true here – SNS strives to provide its guests with a universal experience across stores; but Managers still exercise independent judgment and discretion every day.

Accordingly, it will be up to a fact-finder to weigh the Parties' conflicting evidence and theories and determine whether Managers' primary duty satisfies the administrative exemption. Summary judgment is also improper on this ground and the Court should deny Plaintiffs' motion for summary judgment.

## III.   CONCLUSION

For the reasons stated above, Defendant Steak N Shake Operations, Inc. requests that the Court enter an order denying Plaintiffs' Motion for Summary Judgment, allowing the Parties to proceed to trial on the merits including Defendant's assertion of the executive exemption and administrative exemption to the FLSA, and awarding any other appropriate relief.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

*/s/ Erin E. Williams*
Rodney A. Harrison, #44566MO
Erin E. Williams, #60935MO
René L. Duckworth, #62070MO
Mallory M. Stumpf, #70377MO
7700 Bonhomme Avenue, Suite 650
St. Louis, MO  63105
Telephone:  314.802.3935
Facsimile:  314.802.3960
rodney.harrison@ogletree.com
erin.williams@ogletree.com
rene.duckworth@ogletree.com
mallory.stumpf@ogletree.com

Attorneys for Defendant


### CERTIFICATE OF SERVICE

The undersigned certifies that on the 5th day of November, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.


*/s/ Erin E. Williams*
An Attorney for Defendant

36151077.6