UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA DRAKE and RANDY SMITH on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:14-cv-01535-JAR |
| STEAK N SHAKE OPERATIONS, INC, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Alter Judgment. (Doc. 336.) The motion is fully briefed and ripe for ruling. (*See* Docs. 337, 342.)

**Background**

This case began in 2014 with a complaint for damages for unpaid overtime filed by Managers who worked for Defendant Steak N Shake Operations, Inc. ("SnS") Managers. The Managers sought to pursue a class action under the Missouri Minimum Wage Law ("MMWL") and a collective action under the Fair Labor Standards Act ("FLSA"). (Doc. 1.) The collective and class were formally certified in December 2017. (Doc. 170.) A six-day jury trial was held in February 2019. (Docs. 306-26.) The jury found for Plaintiffs on the issues of liability and willfulness and, in a second phase of trial, awarded the 275 MMWL class members a total of $2,883,180.05 and awarded the eleven FLSA class members a total of $154,988.22. (Docs. 324, 332.) The Court entered a judgment incorporating the jury's verdicts on February 28, 2019. (Doc. 333.)

1

Thereafter, Plaintiffs filed this motion to alter judgment, arguing that they are entitled to (1) liquidated damages under the MMWL in an amount equal to the jury's $2,883,180.05 award; (2) liquidated damages under the FLSA in an amount equal to the jury's $154,988.22 award; (3) attorney fees in the amount of $1,819,200 based on hourly rates of $575 and $550; and (4) costs in the amount of $40,219.49. (Doc. 337.) Defendant does not challenge Plaintiffs' first or fourth requests, but it argues that it is shielded from liquidated damages under the FLSA because it acted in good faith and asserts that the claimed hourly rates are unreasonably high. (Doc. 342.)

## Discussion

The Court has broad discretion to amend its judgment under Rule 59(e). *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982).

### 1. *Plaintiffs' Request for Liquidated Damages under the MMWL*

Under the MMWL, as applicable when Plaintiffs filed suit, employers who fail to properly pay overtime "shall be liable to the employee affected for the full amount of the wage rate and an additional equal amount as liquidated damages." Mo. Rev. Stat. § 290.527 (2017). Defendant does not dispute that the award of liquidated damages is mandatory and automatic under the statute. (*See* Doc. 342.) Accordingly, the Court will amend its judgment to include liquidated damages under the MMWL in an amount equal to the jury's $2,883,180.05 award.

### 2. *Plaintiffs' Request for Liquidated Damages under the FLSA*

Under the FLSA, employers who fail to properly pay overtime "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C.A. § 216(b). "An award of liquidated damages under section 216(b) is mandatory unless the employer can show good faith and reasonable grounds for believing that it

was not in violation of the FLSA." *Braswell v. City of El Dorado, Ark.*, 187 F.3d 954, 957 (8th Cir. 1999) (citing *Hultgren v. Cty. of Lancaster*, 913 F.2d 498, 508-09 (8th Cir. 1990)).

Defendant asserts that it "acted in good faith and had reasonable grounds for believing that its Managers were performing [exempt work]." (Doc. 342 at 2.) At trial, Defendant presented evidence that its Managers routinely certified that they had been informed of their expected job duties and were to notify their superiors if their work deviated from those expectations. Defendant argues that the lack of such notification left it unaware that the Managers were not primarily engaged in exempt work. (*Id*.) In addition, Defendant presented evidence at trial from SnS employees who testified that the company spent significant time and resources training Managers how to perform exempt duties, indicating their good faith belief that the Managers were performing those duties. (*Id*.) In short, Defendant argues that they relied in good faith on their Managers' written certifications that their daily work consisted of the expected exempt duties. Plaintiffs respond that the jury's finding that Defendant willfully violated the requirements of the MMWL precludes a finding of good faith in this case. (Doc. 337 at 3-6.)

The Court begins by noting that the standard for finding willfulness under the MMWL is not the same as the inquiry surrounding good faith under the FLSA. During the liability phase of the trial, the jury found that SnS had acted willfully because it "knew that its conduct was prohibited by the law regarding overtime pay, or showed reckless disregard for whether its conduct was prohibited by the law." (Doc. 319 at Instruction No. 14.) That is not the same as failing to act with "good faith and reasonable grounds for believing that it was not in violation of the FLSA." *Braswell*, 187 F.3d at 957. While the two standards may overlap, the Court believes there is a conceivable set of facts in which an employer acted in good faith under the FLSA but

in reckless disregard for the legality of their actions under the MMWL. For this reason, the Court rejects Plaintiffs' assertion that the jury's verdict *precludes* a finding of good faith.

However, under the specific facts of this case, the Court is not persuaded that Defendant "had no reason to believe that Managers were not performing [exempt] tasks." (Doc. 342 at 2.) Indeed, SnS senior management testified that it was aware of chronic and widespread understaffing. The evidence at trial showed that SnS's primary solution for understaffed stores was to use salaried Managers working overtime and that SnS must have known that those Managers were simply too busy performing production and service duties to meet the definitions for exempt employees. Thus, SnS's failure to pay overtime was not a good faith mistake. Accordingly, the Court will amend its judgment to award Plaintiffs liquidated damages under the FLSA in an amount equal to the jury's $154,988.22 award.

### 3. Attorney Fees

Both the MMWL and the FLSA provide for "reasonable attorney fees." Mo. Rev. Stat. § 290.527; 29 U.S.C. § 216(b). "The starting point for determining the amount of reasonable attorneys' fees is the lodestar amount, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Thornton v. Mainline Commc'ns, LLC*, No. 4:12-CV-00479 SNLJ, 2016 WL 687844, at *1 (E.D. Mo. Feb. 19, 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). When assessing the reasonableness of an hourly rate, the Court considers "the ordinary fee for similar work in the community." *Shakopee v. Mdewakanton Sioux Cmty. v. City of Prior Lake, Minn.*, 771 F.2d 1153, 1160 (8th Cir. 1985). The court should also consider:

> (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the

experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

*Thornton*, 2016 WL 687844, at *1 (quoting *Starks v. Harris Co. Inc.*, 4:12CV473 DDN, 2014 WL 1314945, at *2 (E.D. Mo. March 26, 2014)).

Defendant does not challenge the number of hours asserted by counsel for Plaintiffs but argues that their requested rates of $575 and $550 are unreasonably high for the Eastern District of Missouri. (Doc. 342 at 2-4.) The Court agrees that the fees are somewhat too high for this district, given all of the factors, and should be adjusted.

A search of FLSA cases in this district in the last five years produces several cases, none of which approved an hourly rate above $350. *See Stockdall v. TG Investments, Inc.*, No. 4:14CV01557 ERW, 2016 WL 4206012, at *1-18 (E.D. Mo. Aug. 10, 2016) (approving an hourly rate of $300 in a one-day bench trial); *Thornton*, 2016 WL 687844, at *2 (approving hourly rates of $350 and $250 following grant of partial summary judgment); *Raniolo v. Southport, LLC*, No. 4:15CV00601 ERW, 2015 WL 10936741, at *1 (E.D. Mo. Sept. 1, 2015) (approving hourly rates of $350, $275, and $200 following grant of summary judgment); *Van Booven v. PNK (River City), LLC*, No. 4:14-CV-851 CEJ, 2015 WL 3774043, at *5 (E.D. Mo. June 17, 2015) (approving hourly rates of $350 and $300 following settlement by the parties); *Koenig v. Bourdeau Const. LLC*, No. 4:13CV00477 SNLJ, 2014 WL 6686642, at *4 (E.D. Mo. Nov. 26, 2014) (approving hourly rates of $350 and $250 following settlement by the parties).

The cases cited by Plaintiffs as examples of approved hourly rates either come from courts outside of this district (Doc. 337 at 17-18 (citing cases from the District of Kansas, Northern District of Illinois and the Eastern District of New York)), or from this district dealing with a different kind of case (*id*. at 14 (citing *In re BankAmerica Corp. Se. Litig.*, 228 F. Supp. 2d 1061, 1065 (E.D.Mo. 2002) (a securities case))). Likewise, two of Plaintiffs' three supporting

affidavits come from wage and hour attorneys who primarily practice outside this district. (*See* Docs. 337-3 to 337-5.) One notable exception is Mr. Meeks, who declared that he had been awarded attorney fees of $675 per hour in a case filed in this district. (Doc. 337-4 at 4.) This Court notes, however, that while the cited award was approved as reasonable, it was the result of a sealed agreed-upon settlement and submitted with the opposing party's consent.

That said, the Court recognizes that this was a complex, years-long case involving almost 300 plaintiffs, that the outcome was unclear, that counsel undertook significant risk in pursuing it to trial, and did pursue the suit all the way to a jury verdict. Given the substantial amount of time and labor expended, counsel's considerable skill, the effects of pursuing this kind of case on a firm of their size, and the outcome of this suit, the Court concludes that counsel are entitled to hourly rates greater than those awarded in the recent FLSA cases in this district cited above. Considering all relevant factors in light of local rates, the Court concludes that hourly rates of $500 for Mr. Donelon and $475 for Mr. Craig are reasonable. Accordingly, the Court will amend its judgment to include an award of $711,150 for Mr. Donelon's 1,422.3 reported hours (Doc. 337-1 at 32), and $865,070 for Mr. Craig's 1,821.2 reported hours (Doc. 337-2 at 38), totaling $1,576,220.

### 4. Costs

Finally, Plaintiffs seek an "award of reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client." (Doc. 337 at 19 (quoting *Channel v. Gates & Sons Barbecue of Missouri, Inc.*, No. 4:14-CV-00248-BCW, 2016 WL 7048390, at *3 (W.D. Mo. June 2, 2016)).) An award of costs is contemplated by 29 U.S.C. § 216(b). As noted, Defendant does not object to Plaintiffs' request for costs or the amount. (*See* Doc. 342.) Accordingly, the Court will amend its judgment to include an award of $40,219.49 in costs.

**Conclusion**

For the foregoing reasons, the Court finds that its Judgment dated February 28, 2019 (Doc. 333), will be amended as described above.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Alter Judgment (Doc. 336), is **GRANTED in part.** An amended judgment will be filed separately.

Dated this 10th day of May, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE