# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA DRAKE and RANDY SMITH, on behalf of themselves and others similarly situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>STEAK N SHAKE, INC.<br>(an Indiana Corporation)<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case no.: 4:14-cv-1535 |

| | | |
|---|---|---|
| CORINNA CLENDENEN, and JENNIFER PICCOLOMINI, on behalf of themselves and others similarly situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>STEAK N SHAKE, INC.<br>(an Indiana Corporation)<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case no.: 4:17-cv-01506 |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' *CONSENT* MOTION
## FOR APPROVAL OF GLOBAL CLASS ACTION SETTLEMENT

## I.    SUMMARY OF CASES

The Settlement Stipulation entered into by the Plaintiffs, Defendant Steak-N-Shake, Inc.[1] ("SnS"), and SnS's parent company Biglari Holdings, Inc. ("Biglari") involves two class action overtime cases against SnS: *Sandra Drake, Randy Smith, et al. v. Steak-N-Shake Operations, Inc.*, Case no. E.D.Mo. 4:14-cv-1535; and, *Corrina Clendenen, Jennifer Piccolomini, et al. v. Steak-N-Shake Operations, Inc.*, Case no.: E.D.Mo. 4:17-cv-1506.  These two cases have been consolidated under *Drake*'s case number for settlement purposes only.  Both cases involve employees titled "Managers" working at SnS's restaurants claiming misclassification under federal and state overtime laws.  *Drake* involves Managers working in Defendant's St. Louis Group Market.  *Clendenen* involves Managers working in Defendant's remaining Group Markets.  The Managers allege they were wrongfully classified as exempt from overtime pay for hours worked in excess of forty per workweek.  *Drake* was tried to a jury verdict on February 26 and 27, 2019.  (Docs. 324, 332)  On May 10, 2019, the Court entered an amended judgment totaling $7,692,777.83 for *Drake*'s 286 class members.[2]  (Doc. 353)  The scheduling for post-trial briefing has not been entered by the Court.  The *Clendenen* litigation is still pending regarding its 428 "opt-in" class members under § 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* ("FLSA").  The parties in both cases are represented by the same counsel.

With post trial pleadings and appeal pending in *Drake*, and with similar class claims being asserted in *Clendenen*, the parties decided that mediation of both cases might be beneficial.  On June 11, 2019, the parties mediated both cases in an attempt to reach a global resolution.  The

---

[1] Formerly known as Steak-N-Shake Operations, Inc.
[2] On June 19, 2019, this Court entered a Second Amended Judgment.  (Doc. 361).  This amendment simply reflected the fact that Steak n' Shake operations, Inc. changed its name to Steak n' Shake, Inc.

parties reached an agreement for a global settlement for both cases on June 14, 2019.   On July

18, 2019, the Parties entered into the Settlement Stipulation resolving both cases.  (Attached as

**Exhibit 1**).  This settlement applies to the 286 *Drake* class members and the 428 opt-in class

members in *Clendenen*.

## II.       TERMS OF THE PROPOSED SETTLEMENT

### A.       The Settlement Funding:

Under the terms of the parties' executed Settlement Stipulation, Biglari will pay

$8,350,000.00 into a gross settlement fund administered by third party administrator Simpluris,

Inc. (hereafter "TPA").  This gross settlement amount will be funded in a single installment, as

reflected in the Settlement Stipulation.   While the overall settlement amount was less than what

Plaintiffs had hoped, they were able to negotiate that Defendant's parent corporation be a party

to this agreement and pay the settlement amount.  From this gross settlement fund, Class Counsel

is seeking a one-third contingency fee.  Class Counsel is also seeking $127,528 for out-of-pocket

expenses; $12,675 for a third-party administrator ("TPA") to process the settlement to class

members; $56,000 as service payments for the four class representatives four trial witnesses, and

twelve class members deposed.  Finally, from this fund, counsel is requesting an expense

payment of $125,250 for distressed debt/bankruptcy consultation services of Dundon Advisers,

LLC.[3]  The global settlement figures are summarized as follows:

| | |
|---|---|
| **Total Settlement:** | **$8,350,000.00** |
| Total Fees: | $2,783,333.33 |
| Total Costs: | $132,428.00 |
| Total Admin: | $12,675.00 |

---

[3] The arguments supporting these fees, expenses, service awards, and costs are fully addressed in
Plaintiffs' Memorandum in Support of Motion for Attorneys' Fees, Expenses, and Service
Awards that has been contemporaneously filed.

| Total Service Awards: | $56,000.00 |
|---|---|
| Dundon  Assoc.: | $125,250.00 |
| Net Total: | $5,240,313.67 |

The breakdown of this global settlement between *Drake* and *Clendenen* is as follows:

| **Drake Settlement Amount:** | **$4,600,000.00** |
|---|---|
| Fees: | $1,533,333.33 |
| Admin Costs: | $6,065.00 |
| Costs: | $102,260.00 |
| Dundon Assoc. | $62,625.00 |
| Service Awards: | $46,000.00 |
| Net Drake Settlement Fund: | $2,849,716.67 |

| **Clendenen Settlement Amount:** | **$3,750,000.00** |
|---|---|
| Fees: | $1,250,000.00 |
| Costs: | $30,168.00 |
| Service Awards: | $10,000.00 |
| Duddon Assoc. | $62,625.00 |
| Admin Costs: | $6,610.00 |
| Net Settlement Amount: | $2,390,597.00 |

*Drake*'s $2,849,716.67 net settlement fund will be distributed among the 286 class members based on a pro-rata basis as determined by their overtime damages owed in the Plaintiffs' expert report (Dr. Liesl Fox, Ph.D. report dated February 12, 2019).  This result creates an average payout to class members of $9,964.04.  The *Clendenen* $2,390,597.00 net settlement fund will be distributed among the 428 class members based on a pro-rata basis as determined by their alleged overtime damages owed in the Plaintiffs' expert report (Dr. Liesl Fox, Ph.D. report dated June 11, 2019).  This result leads to $5,585.50 as average payout to class members.  There are numerous reasons why the *Drake* class is receiving a larger portion of the gross settlement fund compared to *Clendenen*.  *Drake* has been litigating for over five years, including extensive discovery, survived class certification challenges, was pursued through trial,

and these class members hold an actual judgment for payment that can be enforced.  On the other hand, *Clendenen* remains in the infant stage of litigation.  The 428 class members remain subject to extensive discovery, motions for decertification, uncertainty at trial, and no enforceable judgment.  Therefore, the reduced value of settlement per class member in *Clendenen* is warranted.

**B.      Class Notice & Administration:**

The Settlement Stipulation requires notice and payment to the 286 *Drake* class members and 428 *Clendenen* opt-in class members.  This is not a claims-made process.  Under the Settlement Stipulation, the TPA Simpluris, Inc. will mail a notice of the settlement and settlement checks to all class members at the same time.  This notice will include the settlement's relevant terms, the reason for settlement, and an explanation of calculations and claims being released.  (Ex. 1, Exs. B and C).  *Drake* class members will be releasing their claims upon Court approval of the Settlement Stipulation, and the Parties will file a release of the judgment in *Drake* under Federal Rules of Civil Procedure 60(b)(5).  Regarding *Clendenen*, the recipient class member's negotiation of either of the enclosed checks constitutes their acceptance of the settlement and release of their claims.  If the recipient does not want to accept these terms and release their claim, they should not negotiate either check.  In turn, they are free to pursue their claim on their own.  The notice clearly informs these class members of this choice.  (Ex. 1, Ex. C, ¶ 4).

### III.      ARGUMENT

**A.      Process for Approval of Settlement:**

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged

litigation.  *See Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 921 F.2d

1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements.  Courts should hospitably

receive them. . . .  As a practical matter, a remedy that everyone agrees to is a lot more likely to

succeed than one to which the defendants must be dragged kicking and screaming.").  Moreover,

settlement agreements conserve judicial time and limit expensive litigation.  4 Alba Conte &

Herbert Newberg, *Newberg on Class Actions* § 11.41, at 87 (4th ed. 2002) ("The compromise of

complex litigation is encouraged by the courts and favored by public policy.").  Regarding the

*Drake* class claims, the Parties proposal involves resolving the judgment for a Rule 23 class of

275 persons and an FLSA collective class of eleven persons (totaling 286).  Regarding the

*Clendenen* class, the Parties' settlement involves the 428 FLSA collective class members.

###### 1.       *Process for Approving Rule 23 Settlement for Established Class:*

The Parties resolving a Rule 23 class claim must obtain the Court's approval.  *See* Fed. R.

Civ. Proc. 23(e), *see e.g. Risch v. Natoli Eng'g Co., LLC,* 2012 WL 3242099, at *1 (E.D. Mo.

Aug. 7, 2012).  Approval of a Rule 23 class settlement prior to certification by the court typically

involves a two-step process.  First, counsel submits the proposed terms of settlement, and the

court makes a preliminary fairness evaluation.  *Manual for Complex Litigation*, § 21.632 (4th ed.

2004); *see also Newberg on Class Actions* § 11.25, at 38-39 (endorsing two-step process).

Second, if the preliminary evaluation of the proposed class settlement does not disclose grounds

to doubt its fairness or other obvious deficiencies, the Court should direct that notice under Rule

23(e) be given to the class members of a formal fairness hearing, at which arguments and

evidence may be presented in support of and in opposition to the proposed settlement.  *Manual*

§ 21.633.  The reason the second step exists is because such a settlement would involve absent

class members who are bound by the court's ruling.

Here, the *Drake* Rule 23 class has been certified by the Court, and the class members

fully informed via court-approved notice and provided an opportunity to opt out.  Therefore, the

second step set forth above is not necessary.  There are no absent class members.  These class

members were provided notice and an opportunity to "opt-out" of the class already.  (*Drake* Doc.

182)  Indeed, several persons did opt-out.  (*Drake* Doc. 202)  For those who remained in the

Rule 23 class (*i.e.,* the 275 Rule 23 class members), they agreed to be represented by the Class

Representatives Drake and Smith in making decisions on this litigation, and being bound by any

settlement that was reached:

> If you want to participate in this lawsuit, you do nothing.  Since the Court has
> approved this case as a class action, you are automatically considered a class
> member in this lawsuit.  Sandra Drake and Randy Smith and class counsel will
> represent your interests and claims in this lawsuit.  However, you are free to retain
> your own attorney to represent your claims in this case and to enter an appearance
> in this case if you do not want to be represented by Ms. Drake, Mr. Smith and class
> counsel.   If you do not exclude yourself from this lawsuit, you will be bound by
> any judgment of the Court, whether it is favorable or unfavorable to you.  You will
> also be bound by any settlement agreement that may be reached and approved by
> the Court.

(Drake Doc. 202, Ex. A, § 6)  Therefore, notice of settlement, opportunity to opt-out, and a

fairness hearing are no longer applicable to these circumstances.  There are no "absent" class

members whose claims are being settled here.  After notice, these 275 people decided to not

"opt-out."  All 275 Rule 23 class members are "present" class members who consented to remain

in this case and permitted class representatives to make the settlement decision on their behalf.

In turn, the Court's only remaining inquiry regarding the *Drake* Rule 23 class is whether the

settlement is fair, adequate and reasonable (see sections B and C below).

### 2.     *Process for Approving Settlement of FLSA Collective Class:*

Regarding the FLSA collective class members in *Drake* and *Clendenen*  who opted into

both matters, they chose to be bound and represented by the named plaintiffs and their counsel,

and there are no absent class members whose claims are being settled.[4] *See Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 678 (D. Kan. 2004); *Clougherty v. James Vernor Co.*, 187 F.2d 288, 290 (6th Cir. 1951).  Thus, the reasons for judicial scrutiny of Rule 23 class action settlements are not present in FLSA opt in settlements, because absent class members are not bound by the case's outcome.  *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972); *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C. 1977).  Unlike settlements under Rule 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).

Nonetheless, courts have held that settlement of an FLSA collective action generally requires court approval because private settlements will not effectuate a valid release for the employer. *See e.g. Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982).  Accordingly, wage claims under the FLSA are typically settled or compromised in one of two ways.  First, under 29 U.S.C. § 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. Second, as is the case here, under a private FLSA enforcement action, district courts may approve settlements resulting from contested litigation over a *bona fide* dispute between the parties. *Lynn's Food Stores*, 679 F.2d at 1353.  When the latter option is proposed, the Court

---

[4] The FLSA class members' consent to join form states

> By my signature below, I designate the above representative Plaintiffs and their attorneys as my agent to make decisions on my behalf concerning the litigation, the manner and method of conducting this litigation, and decisions regarding settlement, attorney's fees and costs and all other matters pertaining to this lawsuit.

(*See, e.g., Clendenen* Doc. 82-1).

should approve the settlement "after scrutinizing the settlement for fairness." *Id.* (*citing Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)).

**B.      The Presumption of Fairness.**

At the outset, before the terms of the settlement are assessed, the proposed class settlement enjoys a presumption of fairness.  Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."  4 *Newberg on Class Actions* at § 11.41; *see also Little Rock School Dist.,* 921 F.2d at 1391 (stating that class action settlement agreements "are presumptively valid."); *Petrovic v. Amoco Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (holding that a "strong public policy favors agreements, and courts should approach them with a presumption in their favor.").  After the parties' arm's-length negotiations, "judges should not substitute their own judgment as to optimal settlement terms for the judgments of the litigants and their counsel." *Petrovic*, 200 F.3d at 1148-49 (internal quotation marks omitted).[5]

In considering whether a settlement should be approved, the Court is not required to make a detailed investigation consonant with trying the case; it must, however, provide a basis for determining that its decision rests on "well-reasoned conclusions" and is not "mere boilerplate." *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir.1988) (citations omitted).  The

---

[5] *See also In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005) ("We have recognized that a class action settlement is a private contract negotiated between the parties.  Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair adequate, and reasonable to all concerned." (citation omitted)); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002) ("Counsel for the parties have become intimately familiar with the facts and legal issues involved in this case.  Based on their knowledge of the case and the applicable law, as well as their experience in litigating securities claims, counsel believe the settlement is fair, reasonable and adequate.  Although the Court is not bound by counsel's opinion, their opinion nevertheless is entitled to great weight.").

most important consideration in deciding whether a settlement is fair, reasonable, and adequate is

"the strength of the case for plaintiffs on the merits, balanced against the amount offered in

settlement." *Petrovic,* 200 F.3d at 1150 (8th Cir.1999).

## C.    The Applicable Factors Warrant Approval.

Before reaching a settlement agreement with Defendant, Plaintiffs' counsel undertook

every step possible in evaluating a case – including litigating *Drake* through trial.  Prosecuting

*Drake* through trial and all other related litigation (including the similar *Clendenen* claims)

involved significant investigative efforts and discovery of critical class information, over thirty

depositions, Rule 26 disclosures, interrogatories and requests for production, tens of thousands of

documents, and comprehensive class pay data.   Experts were retained, reported, and deposed.

Plaintiffs took numerous depositions under 30(b)(6) regarding Defendant's organizational and

managerial structures, policies and procedures, pay and timekeeping practices, and compliance

efforts.  The parties also spent significant time briefing and addressing questions of law before

this Court regarding class certification, summary judgment, and change of venue.  Finally, the

Plaintiffs spent significant time researching and reviewing SnS's financial statements and debt

obligations.  This included retaining the assistance and services from a distressed debt consulting

firm – Dundon Associates, LLC.  Armed with the critical class data, financial data, and a

thorough understanding of the class's potential reward and risks of pursuing the claims through

appeal (through litigation and trial in *Clendenen*), for which SnS's financial condition was

relevant, Plaintiffs and Class Counsel were able to negotiate a fair settlement.

A district court's order approving a class action settlement falls under the abuse of

discretion standard on review.  *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir.

2015).  "The court's role in reviewing a negotiated class settlement is ... to ensure that the

agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id.* at 509 (quotations omitted).  To determine whether *Drake*'s Rule 23 class action settlement is "fair, reasonable, and adequate," district courts must analyze the following four factors: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017) (citation omitted).

Regarding the FLSA collective classes in *Drake* and *Clendenen*, "[t]o approve an FLSA settlement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned and (3) the proposed settlement contains an award of reasonable attorney fees." *Ritz v. Directory Pub. Solutions*, 2014 WL 2779485, at *1 (E.D.Mo. June 19, 2014) (citing *Grove v. ZW Tech, Inc.,* No. 11–2445–KHV, 2012 WL 4867226, at *3 (D.Kan. Oct. 15, 2012)).  In addressing the second factor - determining whether a settlement of an FLSA collective action is "fair and equitable to all parties" - courts apply the same four factors regarding Rule 23 class settlements set forth above. *Id.*

Plaintiffs will address the "fair and equitable" factors in the following section as they apply to both the *Drake* Rule 23 class and the *Clendenen* and *Drake* FLSA collective class settlements.  Prior to doing so, there remains two factors from *Ritz, supra*, regarding the FLSA collective action settlements.  It is clear that this litigation involves a bona fide dispute.  The dispute involved whether Managers were overtime exempt under federal and state laws.   The Parties have slugged this issue out over five years including a jury trial.  This extensive litigation led the parties to explore a resolution with the assistance of an experienced mediator and required weeks of negotiations.  There is no doubt a legitimate dispute exists.  The other factor –

11

an award of reasonable attorneys' fees – is sought via the Plaintiffs' contemporaneous motion

seeking the same.  As addressed below, the "fair and reasonable" factors are also met.

### 1.      The Merits of the Plaintiffs' Case Weighed Against the Terms of the Settlement.

For *Drake*, the Settlement is available without the delay, expenses, and uncertainties of

appeal.  For *Clendenen*, it is available without the delay, expenses, and uncertainties involved

with discovery, dispositive motions, motions to certify/decertify, trial, post-trial proceedings, and

appeal.  In *Drake*, a jury found the merits in favor of the class members.  However, these

findings are subject to post-trial motions and appeal.  While Plaintiffs believe their chances of

success in this post-trial process are high, risk still exists.  That said, this Settlement is driven

mostly by the second factor below.  In *Clendenen*, the Defendant has promised an extensive

discovery process and a new line of attack on class certification, summary judgment, and if

necessary, trial.  At the very least, this process will take close to two years adding value to a

certainty of payment today.  Again, as discussed in the following section, payment today versus

uncertainty of solvency years from now, weighs in favor of settlement.  Also, payments to these

class members under this settlement are not *de minimis* by any means.

The *Drake* class settlement reflects 60% of the existing judgment for the 286 class

members.  In *Clendenen*, the settlement reflects payment of 33% of overtime owed to the 428

class members.  Payment of a portion of the recovery makes sense given SnS's uneven financial

performance.  In *Keil v. Lopez*, 862 F.3d at 696, the Eighth Circuit affirmed approval of a class

settlement that only paid a portion of the potential recovery, noting that "[a]s courts routinely

recognize, a settlement is a product of compromise and the fact that a settlement provides only a

portion of the potential recovery does not make such settlement unfair, unreasonable or

inadequate." (internal quotations omitted).  Given the circumstances here, 60% of judgment and

33% collection of wages reflects a reasonable and fair result.  *See e.g., Sanchez v. Roka Akor Chi. LLC*, No. 14-cv-4645, 2017 WL 1425837, at *7 (N.D. Ill. Apr. 20, 2017) (citing cases describing recoveries of 25–75% of claimed wages as exceptional); *Rotuna v. W. Customer Mgmt. Grp., LLC*, 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (awarding one-third of common fund for attorneys' fees and describing recovery of 75% to 25% of claimed wages as "exceptional."); *Dillworth v. Case Farms Processing, Inc.*, 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (describing recovery of one-third of claimed wages as "exceptional.").  These outcomes are especially favorable given Defendant's financial condition.

### 2.     The Defendant's Financial Condition:

SnS's financial condition played a significant factor in resolving both cases for this amount at this time.  Plaintiffs retained consultants Dundon Advisers, LLC to advise on the issues raised by SNS's financial condition.  Due to the confidential nature of financial data, the Plaintiffs are submitting for *in camera* review declarations from class counsel Brendan Donelon and Plaintiffs' consultant Matthew Dunton setting forth in more detail the financial data and analysis regarding Defendant's financial condition.  The Plaintiffs were able to negotiate that Defendant's parent corporation be a party to the Settlement Stipulation.  A review of this information will reflect that Plaintiffs' ability to obtain and ensure payment of this settlement amount from Defendant's parent corporation is an excellent result.

Through the terms of this agreement, *Drake* and *Clendenen* class members are ensured payment now for a sum certain.  The alternative choices are not as good.  Uncertainty and delay from appealing *Drake* and litigating *Clendenen* balanced against SnS's precarious financial situation warrants approval of this settlement.  This one factor often impacts courts in finding that a settlement is fair and reasonable.  *See e.g., Spann v. J.C. Penney Corp.*, 314 F.R.D. 312,

13

327 (C.D.Cal. 2016) (internal citations omitted) ("The parties also litigated and negotiated under a huge cloud of uncertainty concerning [Defendant's] financial stability.  These and other facts weighed heavily on the settlement negotiations and strongly support its reasonableness."); *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 60 (D.D.C. 2010) ("Another factor to take into consideration is [Defendant's] ability to pay a judgment even if Plaintiffs successfully prosecuted their claims at trial …. [Defendant's] financial condition was 'at the forefront of the settlement discussions,' ….  Plaintiffs' desire to obtain immediate and certain relief weighs in favor of approving the settlement."); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (in affirming class action settlement as reasonable, appellate court stated, "[h]ere one factor predominates to make clear that the district court acted within its discretion. That factor is [Defendant's] financial condition."); *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *2 (E.D. Mo. June 30, 2005) (finding settlement that paid class members "32% to 93% of Lead Plaintiff's estimates of damages" to be "remarkable given [Defendant's] precarious financial condition. The Company has been losing money and bleeding cash, hampered by its $18 billion debt load.").  SnS's financial condition, coupled with Plaintiffs obtaining a surety of payment now, warrants a finding that this Settlement is fair and reasonable.

### 3.      *The Complexity and Expense of Further Litigation:*

Further litigation in *Drake* could expose the Plaintiffs to decertification, remand of the jury verdict, and/or a lowering of damages awarded.  This process will also be time consuming – well over a year for an order on appeal.  It would also create further expenses for both Parties. *Clendenen* is relatively early in the litigation process.  To reach similar results as the *Drake* class, the Plaintiffs will endure well over a year of discovery, certification motions, summary judgment motions, and if applicable, a lengthy trial.  Again, this would all be subject to appeal if

successful.  This litigation will take at least two years, cost the parties hundreds of thousands of

dollars in expenses, and millions in attorneys' fees.  As addressed in the prior section, all of these

efforts could be for naught if SnS is unable to satisfy any positive result obtained by the

Plaintiffs.  This complexity, coupled with significant future expense, warrants a finding that this

Settlement is fair and reasonable.

### 4.    *The Amount of Opposition to the Settlement:*

After advice from Class Counsel, well informed and experienced class representatives

Drake, Smith, Clendenen and Piccolomini all agree that this Settlement is in the class members'

best interest – especially given SnS's financial condition.  Class Counsel sent letters to the *Drake*

class members and emails to the *Clendenen* class members regarding the Settlement's terms.  To

date, Class Counsel has only received positive feedback.

### C.    **The Court Should Approve the Proposed Notice & Payment Method.**

The Notice/Payment Packages (Ex. 1, Exhibits B-C) will be mailed to the Class Members

at their last known addresses.  In *Drake*, the TPA will conduct a USPS data base search to ensure

the addresses are up to date.  Also, for any notices returned, the TPA will have class members'

phone numbers available to contact for current address information.  If that does not work,

further efforts to locate the recipient will be taken (*e.g.,* credit skip trace, *see* Ex. 1, section

12(c)).  In *Clendenen*, the 428 class members recently completed contact information on their

consent forms.  These forms provide recent mailing addresses, phone numbers, and email

addresses.  If any of these mailings are returned, the TPA will have phone number and email

addresses for updates.  Again, if this does not lead to a current address, the TPA will also

perform other efforts to locate.

The notices concisely and clearly state in plain, easily understood language the nature of the action, the status of the class members' claims, the reasons why a resolution was reached, the amount of the class members' payment, and the method for calculating this amount.  (*See* Ex. 1, Exs. B and C).  As class members being paid on their judgment, the *Drake* recipients will be receiving a notice of settlement along with their settlement checks.  These class members are informed that their claims are being dismissed in lieu of this payment on the judgment.  The *Clendenen* class members will only be releasing their claims if they negotiate either or both of the enclosed settlement checks.  If they do not negotiate either of the checks before their 120-day expiration, they are not releasing any claims and are free to pursue them on their own.  The notice clearly explains this process.  (Ex. 1, Ex. C, ¶ 4).  In summary, this is not a claims made process.  The Class Members will have their checks billed directly to them.

The proposed notices also inform Class Members that Class Counsel have pursued the lawsuit on a contingent basis, and details the Court's approval of attorneys' fees, expenses, and service awards.  The notices are accurate and fully inform Class Members of the material terms of the Settlement and their rights pertaining to it.  The Court should approve the proposed form of Notice/Payment Packages.

**D.     Schedule of Events:**

The Parties' Settlement Stipulation contains the following schedule of events upon Court approval:

| Event | Terms from Stipulation |
|---|---|
| **Effective Date of settlement.** | 31 days after Court approval. |
| Biglari Holdings funds Gross Settlement Amount into the QSF per direction of TPA. | 3 days after Effective Date. |
| Payment of Service awards to plaintiffs, payment of attorneys' fees and costs. | 7 days after Effective Date. |
| Parties dismiss Clendenen class members' claims with prejudice, move to satisfy judgment in Drake. | 7 days from Effective Date. |
| Payment of administrative costs to the TPA. | 21 days after Effective Date. |
| TPA mails notice/payment packages to Class Members. | 21 days after Effective Date. |
| Settlement checks expire. | 120 days after issuance. |
| Reversion of any residual funds to Defendant. | 10 days after settlement checks expire. |

## V.     CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully request that the Court approve

their *Consent Motion for Approval of Global Class Settlement*.

Respectfully submitted,



*/s/ Brendan J. Donelon*
Brendan J. Donelon, MO #43901
4600 Madison, Suite 810
Kansas City, Missouri 64112
Tel:     (816) 221-7100
Fax:     (816) 709-1044
brendan@donelonpc.com

Daniel W. Craig, MO #43883
6614 Clayton Rd., #320
St. Louis, Missouri 63117
Tel:     (314) 297-8385
Fax:     (816) 709-1044
dan@donelonpc.com

ATTORNEYS FOR PLAINTIFFS

## Certificate of Service

Plaintiffs hereby certify that a true and correct copy of the foregoing was sent on July 22, 2019 to the following Defense counsel of record email addresses per the requirements of this Courts CM/ECF practices and procedures.

Erin Williams
Rodney A. Harrison
Renee L. Duckworth
Mallory Stumpf
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C
7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63105
Telephone: 314.802.3935
Facsimile: 314.802.3960
erin.williams@ogletree.com
Mallory.stumpf@ogletree.com
Rene.duckworth@ogletree.com
rodney.harrison@ogletree.com

Attorneys for Defendant