## SETTLEMENT STIPULATION

This Settlement Agreement is made by and among the Plaintiff Class Representatives (defined below), Defendant Steak-N-Shake, Inc. (formerly known as Steak-N-Shake Operations, Inc.) (hereafter referred to as "SnS"), and SnS's parent corporation Biglari Holdings, Inc. to fully and completely settle the following actions (collectively referred to as the "Wage-Hour Lawsuits"):

*Drake, et al. v. Steak-N-Shake, Inc.*, E.D.Mo. case no.: 4:14-cv-1535 (referred to herein as "*Drake*"); filed on September 8, 2014, whereby Plaintiffs asserted lost overtime claims under § 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") on behalf of Managers working in Defendant's St. Louis Group Market and lost overtime claims under the Missouri Minimum Wage Law ("MMWL"), Mo.Rev.Stat. § 290.500 *et seq.* on behalf of Managers working at Defendant's stores located in Missouri; and

*Clendenen, et al. v. Steak-N-Shake, Inc.*, E.D.Mo. case no.: 4:17-cv-1506 (referred to herein as "*Clendenen*"); filed on January 30, 2017, whereby Plaintiffs asserted lost overtime claims under § 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") on behalf of Managers working in all of  Defendant's Group Markets except the St. Louis Group Market; lost overtime claims under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS §105/1 *et seq.*, on behalf of Managers working at Defendant's stores located in Illinois; and lost overtime claims under Ohio's wage laws, Ohio Rev. Code Ann. ("R.C.") § 4111, *et seq.*, on behalf of Managers working at Defendant's stores located in Ohio ;

both of which are pending before the Honorable John A. Ross in the United States District Court for the Eastern District of Missouri and both of which have been consolidated for settlement purposes under the *Drake* case number.

WHEREAS, in the Wage-Hour Lawsuits, the Class Representatives, on behalf of themselves and other purportedly similarly situated employees, have asserted Wage and Hour Claims (as defined below); and

 WHEREAS, SnS denies that it has committed any wrongdoing or violated any federal, state, or local laws, disputes the claims asserted in the Wage-Hour Lawsuits, and continues to assert that it has meritorious defenses to such claims; and

WHEREAS, on February 26, 2019, a jury in the *Drake* case returned a liability verdict in favor of the 286 Manager class members, and on February 27, 2019 the jury returned a verdict for damages in the amount of $3,038,169.17 for the 286 Manager class members, and on May 10, 2019 the Court entered an amended judgment in the amount of $7,692,777.83 for the 286 Manager class members, including attorney's fees and costs, and as part of the Settlement discussions, Class Representatives and SnS have stayed the briefing schedule for SnS's post-trial motions in *Drake*; and

WHEREAS, on September 28, 2018, the Court granted conditional class certification in the *Clendenen* case under § 216(b) of the FLSA whereby 428 Managers have consented to join including the two named Plaintiffs; and

1

WHEREAS, the Parties reached a settlement agreement on or about July 2, 2019, and have drafted this Settlement Stipulation to further memorialize those terms; and

WHEREAS, in order to avoid the expense and burdens of further litigation and after these substantial, arms-length settlement negotiations, the Parties desire to resolve the Wage-Hour Lawsuits.

NOW, THEREFORE, the Parties agree as follows:

1.     **Definitions.**  As used in this Agreement, the following terms have the following meanings:

**"Agreement"** refers to this Settlement Stipulation document.

**"Approval Order"** means the Court's order granting approval of the Settlement with the Parties submitting a proposed order, attached hereto as Exhibit A.

**"Manager"** means a person who has been employed by Steak-N-Shake as a salaried-exempt employee with the job title of Manager.

**"Attorneys' Fees"** means the amount to be paid to Class Counsel pursuant to Class Counsel's motion and subject to the Court's approval and the limitations described in section 8 below.

**"Claims Administrator"** means Simpluris, Inc.

**"Class Counsel"** means Donelon, P.C.

**"Class Members"** means the individuals falling within the Settlement Classes, as described in Section 4 below.

**"Class Member Payment"** means, for each Class Member, his or her individual settlement payment, as described in Section 5 below.

**"Class Representatives"** means Sandra Drake, Randy Smith, Corinna Clendenen, and Jennifer Piccolomini.

**"Court"** means the United States District Court for the Eastern District of Missouri.

**"Defendant"** means Steak-N-Shake, Inc. (formerly known as Steak-N-Shake Operations, Inc.).

**"Effective Date"** means: (i) if no appeal is taken from the Final Approval Order, thirty-one (31) days after the Court's entry of the Approval Order; or (ii) if an appeal is taken from the Final Approval Order, the date on which all such appeals (including, *inter alia*, petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for *certiorari* or any other form of review) have been finally disposed and can no longer be appealed or reviewed.

**"Gross Settlement Amount"** means the maximum total amount that SnS and/or Biglari Holdings, Inc. can be required to pay under this Agreement.  This amount shall not exceed eight million three hundred fifty thousand dollars ($8,350,000.00).

**"Lawsuit Costs"** means the monies to be paid to Class Counsel for litigation expenses, fees incurred by Plaintiffs' stressed debt consultants Dundon Advisers, LLL for $125,250 and monies to be paid for the costs incurred by the Claims Administrator in administering the Settlement, all pursuant to Class Counsel's motion and subject to the Court's approval.

**"Net Settlement Fund"** means the Gross Settlement Amount minus all Court-approved Attorney's Fees, Lawsuit Costs, and Service Awards.

**"Notice/Payment Package"** means, for each Class Member, the package compiled by the Claims Administrator and including the Notice of Settlement Form as reflected in Exhibits B and C, including the Class Member's two settlement checks as described in Section 11(e)(i) below.

**"Parties"** means SnS, Biglari Holdings, Inc., and Class Representatives.

**"QSF"** means the Qualified Settlement Fund established and administered by the Claims Administrator.

**"Released Parties"** means SnS, Biglari Holdings, Inc., and each of their respective divisions, affiliates, subsidiaries, predecessors, successors, directors, partners, principals, officers, members, fiduciaries, trustees, insurers, employees, attorneys, and agents, including but not limited to Sardar Biglari.

**"Rule 23"** means Federal Rule of Civil Procedure 23.

**"Service Awards"** means the payments to Class Representatives or courtroom or deposition witnesses pursuant to Class Counsel's motion and subject to the Court's approval and the limitations/procedures described in section 9 below.

**"Settlement"** means the terms described in this Agreement.

**"Settlement Class"** means the groupings of Class Members described in section 4 below.

**"SnS/BH's Counsel"** means Ogletree, Deakins, Nash, Smoke & Stewart, P.C. and Latham & Watkins LLP.

**"Wage and Hour Claims"** means any and all suits, actions, causes of action, claims, or demands based on alleged violations of the FLSA or any state or local law including, but not limited to, employees' hours of work or payment of wages (including overtime wages), that were alleged or could have been alleged in the Wage-Hour Lawsuits.

2.     **Maximum Settlement Amount.**  Biglari Holdings, Inc. will pay the maximum

settlement amount not to exceed eight million three hundred fifty thousand dollars ($8,350,000.00) to resolve the Wage-Hour Lawsuits.

3. **No Admission of Liability and No Concession as to the Merits.**  SnS and Biglari Holdings, Inc., on behalf of themselves and all Released Parties, deny that they violated the law in any manner alleged in or related to the Wage-Hour Lawsuits.  The Parties enter into this Agreement to avoid the risks, uncertainty, expense and burden of further litigation.  This Settlement shall not be construed or deemed to be an admission of liability, culpability, negligence, or wrongdoing on the part of SnS, Biglari Holdings, Inc., or any Released Party.

4. **Settlement Class.**  The "Settlement Class" is divided into two subclasses as follows:

> **"*Drake* Class":**  The 286 Manager class members, including Plaintiffs Drake and Smith, who were subject to the Court's May 10, 2019 amended judgment in the *Drake* case and identified as class members in Class Representative Drake's and Smith's expert report from Dr. Liesl Fox, Ph.D dated February 12, 2019.

> **"*Clendenen* Class":**  The 428 Managers as agreed upon by the Parties who consented to join the FLSA collective action claim in the *Clendenen* case identified as class members in Class Representative's expert data report from Dr. Liesl Fox, Ph.D dated June 11, 2019.

5. **Determining the Class Member Payments.**  The Gross Settlement Amount $8,350,000.00 shall be divided as follows:  $4,600,000.00 for the Class Members in *Drake* and $3,750,000.00 for the Class Members in *Clendenen*.  Within fourteen (14) days of the execution of this Agreement, the Class Representatives will determine the Class Member Payments as follows:

(a)  Each Class Member in the *Drake* Class shall be entitled to their pro-rated share of the portion of the Net Settlement Fund attributed to the *Drake* Class Members.  In calculating the *Drake* class member's pro-rated percentage, the Class Representatives will use the member's lost overtime figure calculated by Class Representative's expert witness Dr. Liesl Fox, Ph.D, in her February 12, 2019 report.

(b)  Each Class Member in the *Clendenen* Class shall be entitled to their pro-rated share of the portion of the Net Settlement Fund attributed to the *Clendenen* Class Members.  In calculating the *Clendenen* FLSA Class member's pro-rated percentage, the Class Representatives will use the member's lost overtime figure calculated by Class Representative's expert data report from Dr. Liesl Fox, Ph.D dated June 11, 2019.

Within twenty-one (21) days after the execution of this Agreement, the Class Representatives shall provide the Class Member payout data to the Defendant and Claims Administrator.

6. **Funding the QSF.**  Within three (3) days after the Effective Date (or the soonest banking

business day thereafter), Biglari Holdings, Inc. shall deposit the Gross Settlement Amount into the QSF pursuant to the Claims Administrator's instructions.

7.   **Joint and Several Liability.**   Defendant SnS and Biglari Holdings, Inc. are jointly and severally liable for payment of the Gross Settlement Amount set forth under under terms of this Agreement.  Without limitation of the foregoing, no bankruptcy or other insolvency event of either SnS or Biglari Holdings, Inc. shall reduce the liability of the other or extend the period of time provided for their compliance with the provisions hereof.  Should any or all transfers of Gross Settlement Amount funding be avoided as a preference (or otherwise clawed back) for the benefit of the creditors of one of the joint and severally liable Parties' bankruptcy or other insolvency estate, the other joint and severally obliged Party shall be obliged to make a compensatory payment to the Claims Administrator for disposition as Gross Settlement Amount funding equal to the entire amount so avoided or clawed back.  If and in event such an avoidance or clawback is taken, a bankruptcy or insolvency claim arises in favor of the Class Representative on account of preference or clawback, and the joint and severally liable Party obliged to make the compensatory payment provided for in the prior sentence actually makes such payment in full, the Class Representative shall transfer the bankruptcy or insolvency claim in question to the paying joint and severally obliged Party upon its request, provided, however, that the transferee of the claim shall bear the full cost of seeking such claim's allowance and the full risk of the value of allowed claims.  (For the avoidance of doubt, an avoidance or clawback which deos not give rise to a claim shall nevertheless be subject to the compensatory payment provided for in this paragraph.)

8.   **Attorneys' Fees and Lawsuit Costs.**

(a)   Class Counsel intends to file with the Court a motion seeking the Court's approval for the payment of no more than one-third (1/3) of the Gross Settlement Amount for Attorney's Fees and not more than $275,000.00 for Lawsuit Costs. Attorneys' fees shall be deducted from the Gross Settlement Amount prior to the deduction of Lawsuit Costs.  The Lawsuit Costs and Attorney's Fees awarded to Class Counsel shall be at the sole discretion of the Court, and this Settlement is not contingent upon the Court's approval of the amounts sought by Plaintiffs for Lawsuit Costs and/or Attorney's Fees.  If the Court reduces said fees or costs, then the Net Settlement Fund amount shall be adjusted accordingly.  Neither SnS nor Biglari Holdings, Inc. shall oppose Class Counsel's petition or motion for the recovery of Attorney's Fees and Lawsuit Costs, subject to the limitations herein.

(b)   Any Attorneys' Fees and Lawsuit Costs awarded by the Court in connection with this Settlement shall be paid by the Claims Administrator to Class Counsel within seven (7) days after the Effective Date.

(c)   Payments made pursuant to this Section shall be reported to all governmental taxing authorities by the Claims Administrator on IRS Form 1099.

9.    **Service Awards.**

    (a)    Class Counsel intends to file with the Court a motion seeking the Court's approval for the payment from the Gross Settlement Amount of certain Service Awards of up to $10,000.00 for each Class Representative Sandra Drake and Randy Smith, up to $5,000.00 for each Class Representative Corinna Clendenen and Jennifer Piccolomini, up to $5,000.00 for Class Members who provided courtroom testimony, and up to $500.00 for Class Members who provided deposition testimony in *Drake*.  Such Service Awards shall be at the sole discretion of the Court, and this Settlement is not contingent upon the Court's approval of such Service Awards.  Neither SnS nor Biglari Holdings, Inc. shall oppose Class Counsel's petition or motion for the payment of such Service Awards, subject to the limitations herein.

    (b)    Any Service Awards approved by the Court in conjunction with the Settlement shall be paid from the QSF and shall be in addition to the Participating Class Member Payments otherwise owed to each recipient.  Service Awards shall be distributed by the Claims Administrator in separate checks mailed within seven (7) days after the Effective Date.

    (c)    Payments made pursuant to this Section shall be reported to all governmental taxing authorities by the Claims Administrator on IRS Form 1099s.

10.    **Claims Administrator.**  Class Counsel has retained the Claims Administrator Simpluris, Inc., who shall serve as the administrator of the Settlement and perform the services described in this Agreement.  The Parties, through their counsel, will cooperate in good faith to resolve any disputes regarding the Claims Administrator's ability or need to perform certain duties under this agreement, and any unresolved disputes shall be referred to the Court.  The Claims Administrator shall be granted reasonable access to SnS's records regarding the Class Members in order to perform its duties.  In order to issue IRS forms, SnS shall provide the Claims Administrator the social security numbers of the Class Members upon request.  This information shall be designated as "Confidential" under the Protective Order in *Drake*.  The costs associated with the Claims Administrator performing its duties set forth in this Agreement shall be paid from the QSF within twenty-one (21) days of the Effective Date.

11.    **Notice & Payment Processes.**

    (a)    <u>Form of Notice in Notice/Payment Package</u>: The Class Notice for the *Drake* Class Members is attached hereto as Exhibit B.  This provides notice to *Drake* Class Members of the terms and conditions of settlement, their inclusion in a settlement, and their payment under this settlement.  The Class Notice for the *Clendenen* Class Members is attached hereto as Exhibit C.  This provides notice to *Clendenen* Class Members of the terms and conditions of settlement, their inclusion in a settlement if they negotiate either of the two enclosed checks, and their payment under this settlement.

(b)    <u>Mailing of the Notice/Payment Package.</u>  Within twenty-one (21) days of the execution of this Agreement, the Parties shall provide to the Claims Administrator a confidential list containing the names, last known addresses, phone numbers, and social security numbers for all Class Members and this shall be separated into the subclasses defined in Section 4 above.  Within fourteen (14) days after the Effective Date, the Claims Administrator will send by first class mail the Notice/Payment Packages which shall include their Class Member Payment in the form of two checks.

(c)    <u>Returned Notice/Payment Packages.</u>  If a Class Member's Notice/Payment Package is returned with a forwarding address, the Claims Administrator shall promptly re-mail the Notice/Payment Package to the forwarding address.  If a Class Member's Notice/Payment Package is returned without a forwarding address, the Claims Administrator shall perform a standard Level 2 Skip Trace in the manner that the Claims Administrator customarily performs skip traces in an effort to determine the Class Member's current address, and, to facilitate this process, SnS shall provide the Claims Administrator with the Class Member's social security number, which shall be maintained in strict confidence, subject to the Protective Order in *Drake*.  If a new address is obtained, the Claims Administrator will promptly re-mail the Notice/Payment Package to the Class Member.  If a new address is not obtained from the U.S. Post Office or through a standard Level 2 skip tracing, the Claims Administrator shall notify the Parties' Counsel, who will confer in good faith, on a case-by-case basis, regarding whether to instruct the Claims Administrator to conduct further traces.  Whenever a Notice/Payment Package is remailed within fourteen (14) days prior to the end of the Claim Period, the recipient Class Member shall have fourteen (14) days from the mailing date to postmark or return his/her Claim Form.

(d)    <u>Report of Diligence.</u>  Class Counsel shall provide to the Court, at least five (5) business days after the mailing of the Notice/Payment Packages by the Claims Administrator, a report of due diligence with regard to the mailing of Notice/Payment Packages.

(e)    <u>Payments to Participating Class Members.</u>

(i)    Regarding the payments to Class Members described in Section 11(b) above, the Claims Administrator shall mail each Class Member two checks written from the QSF's bank account(s) whereby the Class Member Payment shall be paid as follows:  Fifty percent (50%) of the Class Member's Payment will be for lost wage claims and in the form of a check with payroll taxes withheld.  This payment will be reflected in an IRS W-2 Form issued by the Claims Administrator to the Class Member at the end of the tax year.  The remaining fifty percent (50%) of the Class Member Payment shall be for liquidated damages with no taxes withheld.  This payment will be reflected in an IRS 1099 Form issued by the Claims Administrator to the Class Member at the end of the tax year.

(ii)    If a Class Member reports that any of his/her settlement checks were lost, stolen, or undelivered, the Claims Administrator shall promptly issue a stop payment order on the original checks and issue new checks to such Class Member.

(iii)    The settlement checks will expire one hundred twenty (120) days after they are mailed.

(iv)    The Claims Administrator shall report to SnS all checks mailed and cashed, and the dates thereof.

(f)    <u>Payroll Taxes</u>.  The Claims Administrator shall pay both the employer's and employee's share of payroll taxes to federal and state taxing authorities as required.  All such payments shall be made using the tax identification number of the QSF, which the Claims Administrator shall obtain.  The Claims Administrator shall report to SnS the amounts paid to each Class Member and its calculation of the payroll taxes due.  Notwithstanding the foregoing, if in the judgment of the Claims Administrator any payroll taxes due as a result of payments to a Class Member are required to be paid using a SnS tax identification number, then the Claims Administrator shall inform SnS of that opinion and of the amounts paid to the Class Member, and SnS, not the Claims Administrator, shall make all payroll tax payments with respect to that Class Member.  In the event that SnS makes any such payroll tax payments with respect to a Class Member, the Claims Administrator shall reimburse such payments to SnS from the QSF.

(g)    <u>Reversion</u>.  Within ten (10) days after the expiration of the 120-day period specified in Section 11(e)(iii), any funds remaining in the QSF shall revert back to Biglari Holdings, Inc.

**12.**    <u>**Settlement Payments Do Not Trigger Additional Benefits.**</u>  All payments to Class Members shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members.  The Parties agree and the Class Members acknowledge that the payments provided for in this Settlement Stipulation are the sole payments to be made to the Class Members, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

**13.**    <u>**Release.**</u>  Upon the Effective Date, and except as to such rights or claims as may be created by this Settlement Stipulation, each Class Member, and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully release and discharge the Released Parties and their present and former officers, directors, members, managers, employees, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them, ("Releasees") from

any and all Wage and Hour Claims, claims, debts, wages, overtime, commission, losses, demands, obligations, liabilities, penalties, liquidated damages, causes of action, charges, grievances, complaints or suits of any type or nature, known and/or unknown, suspected and/or unsuspected, from the date of the earliest statute of limitations until the Approval Date, for violations of any federal, state or local wage and hour law, for the failure to provide wages and/or overtime pay, liquidated damages, any other penalties, and any other claims whatsoever alleged or that could have been made based upon the facts alleged in the complaints in any of the Wage-Hour Lawsuits, including without limitation all claims for restitution (including interest) and other equitable relief, liquidated damages, compensatory damages, punitive damages, wages, overtime, penalties of any nature whatsoever, other compensation or benefits including 401(k) benefits or matching benefits, retirement or deferred compensation benefits claims on account of unpaid wages and/or overtime, attorneys' fees and costs, whether known or unknown, arising from the Class Members' employment by SnS.  Class Counsel further agrees that it will not assist non-Class Members in pursuing any claims against the Released Parties that, with participation of non-Class Members, were or could have been raised together with the Wage and Hour Claims.

14. **Settlement Contingent on Court Approval.**  This Agreement is contingent upon the Court's approval of the Settlement.  If the Court refuses to grant Approval, the Parties agree to work together to address any deficiencies addressed by the Court and resubmit any necessary motions, pleadings, or courtesy orders to address any said deficiencies.  If the Parties are not able to address any said deficiencies to the Court's satisfaction, or the Effective Date does not occur, this Agreement may be voided at any Party's option, in which case this Agreement (including Exhibits) will become void and will not be used for any purpose in connection with any further litigation in the Wage-Hour Lawsuits or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint, except that the non-disclosure obligations in Section 16 below will remain in effect.  To the extent any Court approval of or judicial process concerning this Agreement remains pending as of any bankruptcy or insolvency of either SnS or Biglari Holdings, Inc., such approval or process, as the case may be, shall proceed as to the other Parties in the Court or other court in which such approval or process was venued prior to such bankruptcy or insolvency, and not in the bankruptcy court or other court presiding over the insolvency, notwithstanding the automatic stay of any action against a debtor in bankruptcy, and each reference to "Parties" in the prior sentences of this Section shall be deemed to refer solely to the Party not in bankruptcy, *provided, however,* that if a lift-stay motion (or non-bankrutpcy insolvency analogous order) is entered permitting the debtor in bankruptcy or insolvency to remain an active party to such actions, such debtor may do so.

15. **Dismissal with Prejudice / Satisfaction of Judgment.**  Within seven (7) days of Biglari Holdings, Inc. depositing the Gross Settlement Amount set forth in Section 4 above, the Parties will jointly move that the Court dismiss with prejudice all the Plaintiffs' and Class Members' claims as defined in Section 13 and jointly move for a release of the judgment in *Drake* under Federal Rule of Civil Procedure 60(b)(5).

16. **Non-Disclosure and Communications.**

      (a)     Neither the Parties nor their counsel will contact the media or utilize any social media regarding this Settlement or its terms.  If contacted regarding this Settlement by any form of media, the Parties' or their counsels' response can be "no comment" or will be limited solely to words to the following effect: "The matter has been resolved to the satisfaction of all parties."

      (b)     Nothing in this Agreement shall prevent SnS or Biglari Holdings, Inc. from filing any required regulatory disclosures regarding the Wage-Hour Lawsuits or complying with their other obligations under the law, provided, however, that SnS and Biglari Holdings Inc. agree that such compliance statements shall not disparage any Class Representative, other Class Members, or Class Counsel, and such disclosures shall not exculpate any Party or Released Party to any extent greater than agreed to in Paragraph 3 hereof.

      (c)     Class Representatives and Class Counsel will promptly notify SnS/BH's Counsel of any third-party demand that they disclose information pertinent to this Settlement.

**17.**    **Return of Documents/Data.**  Class Counsel agrees to return all documents produced in paper by the Defendant in the Wage-Hour Lawsuits and to delete any documents provided in electronic form, except such documents as Class Counsel is by law obliged to retain.

**18.**    **Mutual Full Cooperation.**  The Parties will fully cooperate with each other and with the Claims Administrator to accomplish the terms of this Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Agreement.  The Parties will use their best efforts to effectuate this Agreement, including during any appeals, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

**19.**    **Complete Agreement.**  No representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement, which contains the entire, complete, and integrated statement of all Settlement terms and supersedes all previous oral or written agreements.  This Agreement may not be amended or modified except by a writing signed by the Parties' authorized representatives.

**20.**    **Knowing and Voluntary Agreement.**  The Parties enter into this Agreement knowingly, voluntarily, and with full knowledge of its significance.  The Parties have not been coerced, threatened, or intimidated into signing this Agreement and have consulted with legal counsel regarding the Agreement.

**21.**    **Notifications and Communications.**  Any notifications or communications made in connection with this Agreement shall be sent to the Parties at the addresses of their respective counsel as follows:

*For the Class Representatives*
*and Class Members*:

Brendan J. Donelon
DONELON, P.C.
4600 Madison, Ste. 810
Kansas City, MO 64112
Tel: 816-221-7100
Fax: 816-709-1044
brendan@donelonpc.com

*For SnS and Biglari Holdings,*
*Inc.:*

Rodney A. Harrison
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C
7700 Bonhomme Ave., Ste. 650
St. Louis, MO 63105
Telephone: 314.802.3935
Facsimile: 314.802.3960
rodney.harrison@ogletree.com

*and*

Christopher J. Clark
LATHAM & WATKINS LLP
885 Third Avenue
New York NY 10022
Telephone: 212.906.1350
Facsimile: 212.906.1350
Email: Chris.Clark@LW.com

22. **Severability.**  If any part of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other part of this Agreement, which shall be construed, reformed and enforced to affect the purposes thereof to the fullest extent permitted by law.

23. **Captions and Interpretations.**  Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Stipulation or any provision hereof.  Each term of this Settlement Stipulation is contractual and not merely a recital.

24. **Binding on Assigns.**  This Settlement Stipulation shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

25. **Enforcement of Settlement Agreement and Governing Law.**  This Agreement will be governed by Missouri law.  The Parties submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of this Agreement.

26. **Enforcement of Agreement - Attorney's Fees and Costs.**  If any Party is required to take legal action to enforce any of the terms or conditions of this Agreement, and is successful in such action in all or part of its claims, they shall be entitled to reasonable attorney's fees and costs.

27.  **Agreement Form and Construction.**

  (a)    The terms and conditions of this Agreement are the result of lengthy, carefully considered, arms-length negotiations between the Parties and this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

  (b)    This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Agreement.

  (c)    This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Settlement, for a complete resolution of the Wage-Hour Lawsuits.

28.  **Parties' Authority.**  The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Stipulation and bind the Parties hereto and the Class Members to the terms and conditions thereof.

  **IN WITNESS WHEREOF,** the Parties each voluntarily and without coercion have caused this Agreement to be signed on the dates entered below:

_____          _7 / 12 / 19_____
Sandra Drake                                                   Date

_____          _____
Randy Smith                                                   Date

_____          _____
Corrina Clendenen                                             Date

_____          _____
Jennifer Piccolomini                                          Date

_____          _____
For Donelon, P.C.                                             Date

12

27. **Agreement Form and Construction.**

    (a)    The terms and conditions of this Agreement are the result of lengthy, carefully considered, arms-length negotiations between the Parties and this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

    (b)    This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Agreement.

    (c)    This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Settlement, for a complete resolution of the Wage-Hour Lawsuits.

28. **Parties' Authority.** The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Stipulation and bind the Parties hereto and the Class Members to the terms and conditions thereof.

    **IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Agreement to be signed on the dates entered below:


_____    _____
Sandra Drake    Date


_____    _____
Randy Smith    Date   7/11/19


_____    _____
Corrina Clendenen    Date


_____    _____
Jennifer Piccolomini    Date


_____    _____
For Donelon, P.C.    Date


12

27. **Agreement Form and Construction.**

   (a)   The terms and conditions of this Agreement are the result of lengthy, carefully considered, arms-length negotiations between the Parties and this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

   (b)   This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Agreement.

   (c)   This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Settlement, for a complete resolution of the Wage-Hour Lawsuits.

28. **Parties' Authority.**   The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Stipulation and bind the Parties hereto and the Class Members to the terms and conditions thereof.

   **IN WITNESS WHEREOF,** the Parties each voluntarily and without coercion have caused this Agreement to be signed on the dates entered below:

_____          _____
Sandra Drake                                                   Date


_____          _____
Randy Smith                                                     Date


*Corinne Clendenen*                                     07/10/2015
_____          _____
Corrina Clendenen                                         Date
*Corinne*


_____          _____
Jennifer Piccolomini                                       Date

*[signature]*                                                    07/10/2019
_____          _____
For Donelon, P.C.                                         Date

12

27. **Agreement Form and Construction.**

    (a)    The terms and conditions of this Agreement are the result of lengthy, carefully considered, arms-length negotiations between the Parties and this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

    (b)    This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Agreement.

    (c)    This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Settlement, for a complete resolution of the Wage-Hour Lawsuits.

28. **Parties' Authority.** The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Stipulation and bind the Parties hereto and the Class Members to the terms and conditions thereof.

    **IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Agreement to be signed on the dates entered below:


_____    _____

Sandra Drake    Date


_____    _____

Randy Smith    Date


_____    _____

Corrina Clendenen    Date


_____    7-11-2019

Jennifer Piccolomini    Date


_____    _____

For Donelon, P.C.    Date

_B. Lewis_____
Signature

_July 16, 2019_____
Date

_Bruce Lewis_____
(printed name)
For Steak-N-Shake, Inc.

_B. Lewis_____
Signature

_July 16, 2019_____
Date

_Bruce Lewis_____
(printed name)
For Biglari Holdings, Inc.

# Exhibit   A

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| SANDRA DRAKE and RANDY SMITH, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case no.: 4:14-cv-1535 |
| vs. | ) ) | |
| STEAK N SHAKE, INC. (an Indiana Corporation) | ) ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| CORINNA CLENDENEN, and JENNIFER PICCOLOMINI, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case no.: 4:17-cv-01506 |
| vs. | ) ) | |
| STEAK N SHAKE, INC. (an Indiana Corporation) | ) ) ) | |
| Defendant. | ) | |

**ORDER DETERMINING GOOD FAITH AND GRANTING
APPROVAL OF SETTLEMENT STIPULATION**

The Court now takes up the Plaintiffs' *Consent Motion for Approval of Global Class Action Settlement* along with supporting memorandum and Plaintiffs' *Consent Motion for Approval of Attorneys' fees, Expenses and Service Awards* along with a supporting memorandum for the above captioned matters that have been consolidated for settlement purposes.  After review of said Motions and the supporting memorandum, the Court hereby finds as follows:

1

A.     On September 8, 2014, Sandra Drake and Randy Smith filed a collective class

action under the Fair Labor Standards Act, 201 U.S.C. § 201 *et seq*., ("FLSA") against Steak-N-

Shake, Inc. (formerly Steak-N-Shake Operations, Inc.) (hereafter "SnS") in the federal court in

the Eastern District of Missouri.  On December 12, 2015, the Court entered a stipulation from the

parties consenting to conditional class certification under § 216(b) of the FLSA for all Managers

at SnS's stores located in its St. Louis Group Market.  Plaintiffs also brought a Rule 23 class

claim on behalf of Managers working at SnS' stores in Missouri's Minimum Wage Law,

Mo.Rev.Stat. § 290.500, *et seq*. ("MMWL").   In this matter, Plaintiffs claimed that Managers

were misclassified and wrongfully denied overtime pay for hours worked in excess of forty per

workweek.  Defendant claimed they were exempt from overtime under the executive,

administrative, and combination exemptions.  On December 22, 2017, the Court issued an order

denying SnS's motion to decertify the FLSA collective class and granting the Plaintiffs' Rule 23

motion for class certification under the MMWL.  In the end, there were eleven (11) FLSA

collective class members and 275 Missouri Manager class members (total of 286 class

members).  On February 19, 2019, the parties began a jury trial.  On February 26, 2019 the jury

found SnS liable to the class members for overtime pay.  On February 27, 2019, the jury awarded

the 275 Missouri Manager class $2,883.180.95 in lost overtime and the eleven FLSA Manager

class $154,988.22 in lost overtime.  On May 10, 2019, the Court amended the judgment for the

Missouri Manager class to $5,766,361.90 and the FLSA Manager class to $309,976.44. Plaintiffs

were also awarded $1,576,220.00 in attorneys' fees and $40,219.49 in costs.[1]  The Defendant has

---

[1] In order to address corporate name change of the Defendant from Steak-N-Shake Operations,
Inc. to Steak-N-Shake, Inc., the Court entered a Second Amended Judgment on June 19, 2019.

begun the post-trial motion process; however, the briefing schedule was stayed by the Court pending the parties' June 11, 2019 mediation and this settlement.

B.      On January 30, 2017, Corinna Clendenen filed a collective action under the FLSA for Managers working in all of SnS's remaining Group Markets (*i.e.*, excluding the St. Louis Group Market covered in *Drake*).  She also filed a Rule 23 class action claim on behalf of all Managers working in SnS's Illinois stores under the Illinois Minimum Wage Law, 820 ILCS § 10-5/1 *et seq*. ("IMWL").  This lawsuit was filed in the federal district court for the Central District of Illinois (C.D.Ill. case no.: 1:17-1045-JBM-JEH).  On March 14, 2017, SnS filed a motion seeking the dismissal of this Complaint, or in the alternative, to stay or to transfer the *Clendenen* matter to the Eastern District of Missouri where *Drake* resided.  On May 1, 2017, Plaintiff Clendenen filed a motion for conditional class certification under § 216(b) of the FLSA in the Central District of Illinois.  On May 12, 2017, the Central District of Illinois denied SnS's motion to dismiss or stay *Clendenen* but granted its motion to transfer the case to the Eastern District of Missouri.  On May 25, 2017, Plaintiff Clendenen filed a First Amended Complaint in the Eastern District of Missouri to add Jennifer Piccolomini as a named plaintiff and to add a Rule 23 class action claim on behalf of all SnS Managers working at Ohio stores under Ohio's wage and hour laws, Ohio.Rev.Code.Ann. § 4111 *et seq*.  On September 28, 2018 this Court granted Plaintiffs' motion for conditional class certification under § 216(b) of the FLSA and permitted collective class notice to be mailed to 2,419 current and former SnS Managers working in all SnS group markets (except St. Louis).  The Court also granted Plaintiffs' request and tolled these class members' claims for 515 days.  Per the parties' agreement, 428 Managers (including the two named Plaintiffs) compose the collective class members in *Clendenen*.  Discovery has

not yet begun in this case, and in turn the Plaintiffs have not moved for Rule 23 class certification regarding the Illinois and Ohio classes.

      C.      On _____, 2019, the Plaintiffs filed their *Consent Motion for Approval of Global Class Action Settlement* and supporting memorandum and Plaintiffs' *Consent Motion for Approval of Attorneys' fees, Expenses and Service Awards* along with supporting memorandum.

      D.      This Court has duly considered all of the submissions presented with respect to the Settlement.

      E.      All capitalized terms in this Order Determining Good Faith and Granting Approval of Settlement Stipulation with respect to the Settlement that are not otherwise defined have the same meaning as in the Settlement Stipulation document submitted by the parties.

      NOW THEREFORE, after due deliberation and for good cause, this Court hereby ORDERS that:

      1.      Plaintiffs' *Unopposed Consent Motion for Approval of Global Class Action Settlement* is hereby GRANTED.  For the reasons set forth in the supporting Memorandum, this Court finds the Settlement is fair, reasonable and adequate.  It is in the best interests of the Class Members and should be approved.  This is true especially in light of the benefits to the Class Members accruing therefrom, the substantial discovery and investigation conducted by Class Counsel prior to the proposed Settlement, and the complexity, expense, risks and probable protracted duration of further litigation including the appeal issues in *Drake* and certification issues in *Clendenen*.  More so, the Court finds that the financial circumstances of the Defendant as presented to this Court in reviewing this settlement, and Defendant's ability to pay for any future final judgment in *Drake* or *Clendenen,* further merits a finding that this settlement is fair, reasonable and adequate.

      2.      The Court has reviewed the terms and conditions of the parties' Settlement, including the monetary relief provisions, the plan of allocation, the release of claims, and the

parties' detailed description of the settlement regarding the claims of the Class Members. Based on these terms and conditions, and the Court's familiarity with this case, the Court finds that the proposed Settlement is the result of extensive, arms-length negotiations between the Parties after Class Counsel and Defendant's counsel had fully investigated the claims and become familiar with the strengths and weaknesses of Plaintiffs' claims. The assistance of an experienced mediator, Plaintiffs' expert consultants on distressed debt Dundon Associates, LLC, and the length of the settlement process confirms that the settlement is not collusive.  Based on all these factors, the Court finds that the proposed settlement has no obvious defects and is within the range of possible settlement approval such that notice and payment to the Class Members as set forth in the Settlement is appropriate.

3.      For purposes of the Settlement, this Court approves Brendan J. Donelon and Daniel W. Craig of Donelon, P.C. as Class Counsel for all Class Members.

4.      For purposes of the Settlement, the Court approves the Claims Administrator selected by the Parties as set forth in the Settlement.

5.      The Notice/Payment Package as Exhibits B and C to the Settlement fully and accurately inform the Class Members in *Drake* and *Clendenen* of all material elements of the action and the proposed Settlement.

6.      The parties propose to disseminate the Notice/Payment Packages for all Class Members via first class mail to the last known addresses of all Class Members. This Court finds that the form of method of disseminating the Notice/Payment Packages to the Class Members, as provided in the Settlement, is the best notice practicable under the circumstances and fully meets the requirements of applicable federal and state law.

7.      Within seven (7) days after the "Effective Date" as set forth in the Settlement Stipulation, the Parties shall file a motion to dismiss with prejudice, with each party bearing its own costs, the claims of Plaintiffs and Class Members identified in paragraphs A and B, *supra*, and released pursuant to Section 13 of the Settlement Stipulation.  On this date, the Parties shall also file a motion for a release of the judgment in *Drake* under Federal Rules of Civil Procedure 60(b)(5).

8.      The Plaintiffs' *Consent Motion for Approval of Attorneys' fees, Expenses and Service Awards* is hereby GRANTED.  The Court finds the requested amounts fair and reasonable for the reasons set forth in Plaintiffs' supporting memorandum.

9.      The Court finds, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay, and directs the Clerk to enter this Order of Approval.

Dated this _____ day of _____, 2019.

SO ORDERED:

_____

Hon. JOHN A. ROSS
United States District Judge

6

# Exhibit  B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
*Sandra Drake, et al. v. Steak-N-Shake, Inc.;* case no. E.D.Mo. 4:14-cv-1535

**Notice of Class Action Settlement** for employees with job title of "**Manager**"
for **Steak n' Shake**, Inc.

This is a Court authorized notice.  This is not a solicitation from an attorney.  Read carefully.

| **1.   Why did I get this notice of settlement?** |
|---|

Records indicate that you worked  for Steak n' Shake Operations, Inc. (formerly Steak n' Shake Operations, Inc.) (hereafter "SnS") in a job position titled "Manager" sometime after March 14, 2013.  A class action "Lawsuit" is on file in the United States District Court for the Eastern District of Missouri on behalf of these employees for overtime pay allegedly owed: *Sandra Drake, et al. v. Steak-N-Shake, Inc.("Drake");* case no. E.D.Mo. 4:14-cv-1535 – which covered Managers working in the St. Louis Group Market.  The *Drake* lawsuit reached a verdict and judgment in the Managers' favor in February 2019.  You are receiving this Notice because you are a class member in the *Drake* lawsuit and are covered and bound by the settlement.

| **2.   What is this lawsuit about and why did it settle?** |
|---|

The *Drake* Lawsuit alleges that SnS failed to pay overtime to Managers for hours worked in excess of forty per workweek in violation of state and federal wage and hour laws.  SnS denies violating these laws and contends that Managers were properly classified as exempt from overtime pay under these wage and hour laws. SnS intends to appeal any final judgment holding otherwise.  The Class Representatives, after consulting with their attorneys, who are referred to as "Class Counsel," believe the settlement benefits the Class Members. Settlement enables the Class Members to avoid the risk that the judgment may be reversed on appeal.  If this were to occur, Class Members may recover nothing. Also, the Class Representatives and Class Counsel have concerns about SnS's ability to pay the judgment after an appeal due to its financial circumstances.  Settlement also enables the Class Members to recover money now without further delay and with reduced risk of SnS's ability to pay.  The Judge overseeing the Lawsuit has approved the settlement as fair and reasonable.

| **3.   Your two enclosed checks.  How was the gross amount determined?** |
|---|

Your gross settlement payment as approved by the Court is **$_____.**  Two checks are enclosed representing payment of this amount.  Half of this amount was payment for lost wages and had payroll taxes taken out.  An IRS form W-2 will be issued to you for this payment.  The other half of this amount was issued as payment for liquidated damages with no taxes taken out.  An IRS form 1099 will be issued to you for this payment. Liquidated damages are considered taxable income, so you should consult with your tax preparer.

How was my gross payment determined?  The *Drake* Lawsuit settlement fund is $4,600,000.00.  From this fund, The Court approved Class Counsel's fees equaling one-third of this amount ($1,533,333.33).  The Court also approved payment for Class Counsel's out of pocket expenses of $_____ for Lawsuit Costs and Claims Administrator costs.  The Court also approved service awards totaling $46,000 for the eighteen Class Representatives and Class Members who were deposed or testified at trial on behalf of Managers.  Over the past

five years, these persons initiated the Lawsuit, worked with Class Counsel throughout the litigation, and provided testimony in depositions and at trial - all on your behalf and benefit.

The remaining $_____ from this gross settlement fund ("net settlement fund") was divided among the 286 class members in the *Drake* lawsuit on a pro-rated basis. Your settlement payment represents a *pro rata* share based on the amount of compensation owed to you during the relevant time period to the Lawsuit as determined by Class Counsel's expert witness Dr. Liesl Fox, Ph.D, compared to the compensation owed to the other *Drake* Class Members.

| **4.   What claims have I released as a class member?** |
| --- |

In approving the *Drake* lawsuit, the Court has ruled as follows regarding the claims that you released:

**Release**. Each Class Member, and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully release and discharge the Released Parties and their present and former officers, directors, members, managers, employees, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them, ("Releasees") from any and all Wage and Hour Claims, claims, debts, wages, overtime, commission, losses, demands, obligations, liabilities, penalties, liquidated damages, causes of action, charges, grievances, complaints or suits of any type or nature, known and/or unknown, suspected and/or unsuspected, from the date of the earliest statute of limitations until the Approval Date, for violations of any federal, state or local wage and hour law, for the failure to provide wages and/or overtime pay, liquidated damages, any other penalties, and any other claims whatsoever alleged or that could have been made based upon the facts alleged in the complaints in any of the Wage-Hour Lawsuits, including without limitation all claims for restitution (including interest) and other equitable relief, liquidated damages, compensatory damages, punitive damages, wages, overtime, penalties of any nature whatsoever, other compensation or benefits including 401(k) benefits or matching benefits, retirement or deferred compensation benefits claims on account of unpaid wages and/or overtime, attorneys' fees and costs, whether known or unknown, arising from the Class Members' employment by SnS. Class Counsel further agrees that it will not assist non-Class Members in pursuing any claims against the Released Parties that, with participation of non-Class Members, were or could have been raised together with the Wage and Hour Claims.

| **5.   Are there more details about the settlement?  Questions?** |
| --- |

Yes. This Notice summarizes the most important aspects of the settlement. You can get a copy of the written settlement agreement by emailing the Claims Administrator at: [insert email]. If you have questions or want additional information, contact the Claims Administrator at **800-000-0000**. DO NOT CALL THE COURT OR THE COURT'S CLERK ABOUT THIS SETTLEMENT.

| **6.   Do I have an attorney in this case?** |
| --- |

The Court has designated as Class Counsel Brendan J. Donelon and Daniel W. Craig of Donelon, P.C.; 4600 Madison, Ste. 810, Kansas City, MO 64112; 816-221-7100, brendan@donelonpc.com.

# Exhibit  C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
*Corinna Clendenen, et al. v. Steak-N-Shake, Inc.;* case no. E.D.Mo. 4:17-cv-1506

**Notice of Class Action Settlement** for employees with job title of "**Manager**"
for **Steak n' Shake**, Inc.

This is a Court authorized notice.  This is not a solicitation from an attorney.  Read carefully.

| 1.   Why did I get this notice of settlement? |
| --- |

You previously consented to join a collective class action lawsuit for overtime pay for Managers who worked
for Steak n' Shake, Inc. (formerly Steak n' Shake Operations, Inc.) (hereafter "SnS") in a job position titled
"Manager " - *Corinna Clendenen, et al. v. Steak-N-Shake, Inc. ("Clendenen");* case no. E.D.Mo. 4:17-cv-1506.
On the consent form that you signed and submitted, you agreed to "designate the above representative Plaintiffs
and their attorneys as my agent to make decisions on my behalf concerning the litigation, the manner and
method of conducting this litigation, and decisions regarding settlement, attorney's fees and costs and all other
matters pertaining to this lawsuit." This lawsuit reached a settlement in June 2019.  You are receiving this
Notice because you are a class member in this lawsuit and are covered by the settlement.

| 2.   Why did this lawsuit settle? |
| --- |

After consulting with the employees' attorneys, who are referred to as "Class Counsel," the representative
plaintiffs believe the settlement greatly benefits the Class Members. Settlement enables the Class Members to
avoid the risk that the Lawsuit may not be decertified as a class, lost at trial, or reversed on appeal.  If this were
to occur, Class Members may recover nothing. Also, Class Counsel and named plaintiffs have concerns about
SnS's ability to pay any future judgments after any possible appeal due to its financial circumstances.
Settlement also enables the Class Members to recover money now without further delay and with reduced risk
of SnS's ability to pay.  The Judge overseeing the Lawsuit has approved the settlement as fair and reasonable.

| 3.   Your two enclosed checks.  How was the gross amount determined? |
| --- |

Your gross settlement payment approved by the Court is **$_____.** Two checks are enclosed representing
payment of this amount.  Half of this amount was payment for lost wages and had payroll taxes taken out.  An
IRS form W-2 will be issued to you for this payment.  The other half of this amount was issued as payment for
liquidated damages with no taxes taken out.  An IRS form 1099 will be issued to you for this payment.
Liquidated damages are considered taxable income, so you should consult with your tax preparer.

How was my gross payment determined?  The *Clendenen* Lawsuit settlement fund is $3,750,000.00.  From this
fund, The Court approved Class Counsel's fees equaling one-third of this amount ($1,250,000.00).  The Court
also approved payment for Class Counsel's out of pocket expenses of $_____ for Lawsuit Costs and Claims
Administrator costs.  The Court also approved service awards totaling $10,000 for the two Class
Representatives who initiated the Lawsuit and worked with Class Counsel throughout the litigation - all on your
behalf and benefit.

The remaining $_____ from this gross settlement fund ("net settlement fund") was divided among the 428 class members in the *Clendenen* lawsuit on a pro-rated basis.  Your settlement payment represents a *pro rata* share based on the amount of compensation owed to you during the relevant time period to the Lawsuit as determined by Class Counsel's expert witness Dr. Liesl Fox, Ph.D, compared to the compensation owed to the other *Clendenen* Class Members.

| 4. How do I particiate?  What Claims are being released? |
|---|

<u>If you negotiate either or both of the two enclosed checks, you expressly agree to the terms of the settlement and release the claims described below</u>.  If you do not want to participate in this settlement, do not negotiate either of the two checks enclosed.  If you do not participate, you are not bound by this settlement, and if you choose, you may pursue an individual claim on your own.

In approving the *Clendenen* lawsuit, the Court has ruled as follows regarding your claims released:

**Release**.  Each Class Member, and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully release and discharge the Released Parties and their present and former officers, directors, members, managers, employees, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them, ("Releasees") from any and all Wage and Hour Claims, claims, debts, wages, overtime, commission, losses, demands, obligations, liabilities, penalties, liquidated damages, causes of action, charges, grievances, complaints or suits of any type or nature, known and/or unknown, suspected and/or unsuspected, from the date of the earliest statute of limitations until the Approval Date, for violations of any federal, state or local wage and hour law, for the failure to provide wages and/or overtime pay, liquidated damages, any other penalties, and any other claims whatsoever alleged or that could have been made based upon the facts alleged in the complaints in any of the Wage-Hour Lawsuits, including without limitation all claims for restitution (including interest) and other equitable relief, liquidated damages, compensatory damages, punitive damages, wages, overtime, penalties of any nature whatsoever, other compensation or benefits including 401(k) benefits or matching benefits, retirement or deferred compensation benefits claims on account of unpaid wages and/or overtime, attorneys' fees and costs, whether known or unknown, arising from the Class Members' employment by SnS.  Class Counsel further agrees that it will not assist non-Class Members in pursuing any claims against the Released Parties that, with participation of non-Class Members, were or could have been raised together with the Wage and Hour Claims.

| 5. Are there more details about the settlement?  Questions? |
|---|

Yes. This Notice summarizes the most important aspects of the proposed settlement. You can get a copy of the written settlement agreement by emailing the Claims Administrator at: [insert email].  If you have questions or want additional information,  contact the Claims Administrator at **800-000-0000**.  DO NOT CALL THE COURT OR THE COURT'S CLERK ABOUT THIS SETTLEMENT.

| 6. Who is my attorney in this case? |
|---|

The Court has designated as Class Counsel Brendan J. Donelon and Daniel W. Craig of Donelon, P.C.; 4600 Madison, Ste. 810, Kansas City, MO 64112; 816-221-7100, brendan@donelonpc.com.