## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA DRAKE and RANDY SMITH, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case no.: 4:14-cv-1535 |
| vs. | ) ) | |
| STEAK N SHAKE, INC. (an Indiana Corporation) | ) ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| CORINNA CLENDENEN, and JENNIFER PICCOLOMINI, on behalf of themselves and others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case no.: 4:17-cv-01506 |
| vs. | ) ) | |
| STEAK N SHAKE, INC. (an Indiana Corporation) | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL
<u>OF ATTORNEYS' FEES, EXPENSES & SERVICE AWARDS</u>**

## I. Introduction.

On July 2, 2019, the Parties jointly reached a global settlement in the above-captioned matters, subject to this Court's approval. Plaintiffs have filed a *Consent Motion for Approval of Global Class Settlement*. As detailed in the *Consent Motion*, the global settlement reached in this litigation is in the total amount of $8,350,000.00. From this total global settlement amount, which benefits all current class members, Defendant has agreed not to oppose Plaintiffs' request for attorneys' fees in the amount of one-third of the common settlement fund ($2,783,333.33); litigation expenses ($257,678.00); class settlement administration costs ($12,675.00); and service awards to the named-Plaintiff class representatives and certain participating class members ($56,000.00). After deduction of these requested amounts from the common fund, the net total to the class members will be $5,240,313.67. By way of the Motion and Memorandum in Support, Plaintiffs respectfully seek the Court's approval of these requests.

## II. Plaintiffs' Request for a One-Third Fee from the Common Fund is Reasonable.

The Supreme Court has expressed a preference that parties should agree to the amount of attorney's fees. *See*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Here, the Parties have agreed to resolve this entire litigation through one gross settlement amount. From this "common fund" the class members' payouts and their attorneys' fees and expenses will be distributed. Where there is one common fund settlement – as is the circumstance here – a "percentage of the benefit" method for determining attorney's fees is appropriate and preferred.

As this Court stated last year in *Fellows v. American Campus Communities Services, Inc.*, 2018 WL 3056046, at *5 (E.D. Mo. June 20, 2018) (Ross, J.):

2

>The Eighth Circuit has endorsed two approaches to analyzing a request for attorneys' fees: (1) the lodestar approach, and (2) the "percentage of the benefit," or "common fund," approach. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017), citing *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). "It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case." *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017).

In *Fellows*, a class action settlement with a common source fund, this Court found "the 'percentage of benefit' approach to be the most appropriate methodology for determining fees." *Id*. at *6. This is consistent with Supreme Court, Eighth Circuit, and district court precedent:

>With respect to attorney's fees, the Eighth Circuit has held that in common fund cases such as this [FLSA] one, where attorney fees and class members' benefits are distributed from one fund, a percentage-of-the-benefit method may be preferable to the lodestar method for determining reasonable fees. *See Johnston v. Comerica Mortg. Co.,* 83 F.3d 241, 244–46 (8th Cir.1996) (involving a class action of residential mortgagors against mortgagees); *In re United States Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming district court's award of 36 percent of settlement fund as attorney's fees).

*West v. PSS World Med., Inc.*, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014); *In re NuvaRing Prod. Liab. Litig.*, 2014 WL 7271959, at *2 (E.D. Mo. Dec. 18, 2014) (citations omitted) ("In the Eighth Circuit, use of the percentage of the fund method when awarding attorneys' fees in a common fund case is not only approved, but also well established."); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (recognizing that fees should be a "percentage of the fund bestowed on the class").

In accordance with this authority, Plaintiffs' request here for fees based upon the "percentage of the benefit" method is appropriate. Furthermore, Plaintiffs' request for a one-third percentage fee from the common fund is equally appropriate. In class action cases such as this, courts in this Circuit and district routinely approve common fund attorneys' fees at or around 33%. *See*, *e.g.*, *Huyer v. Buckley,* 849 F.3d 395, 399 (8th Cir. 2017) (citing cases)

3

("[U]nder the percentage-of-the-benefit method, the award [of one-third] was in line with other awards in the Eighth Circuit. Indeed, courts have frequently awarded attorneys' fees ranging up to 36% in class actions."); *West v. PSS World Med., Inc.*, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014) (finding 33% fee in common fund FLSA settlement to be "a reasonable percentage"); *Fellows*, 2018 WL 3056046, at *6 (in approving 28.34% fee, this Court noted that "[t]his is consistent with, and actually less than, the ratio of fees awarded in individual contingent fee cases and other consumer class action cases in this Circuit.").

The one-third fee requested here is particularly reasonable given the extensive efforts undertaken by Plaintiffs' counsel and the results they obtained on behalf of the class members. "To determine the reasonableness of a fee award under either [lodestar or percentage of benefit] approach, district courts may consider relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974)." *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017).[1] However, district courts are "not required to discuss all of the factors, since rarely are all of the *Johnson* factors applicable, and this is particularly so in a common fund situation." *Id.* at 703.

In *Caligiuri v. Symantec Corp.,* 855 F.3d 860, 866 (8th Cir. 2017), the appellate court cited the following factors that "weighed in favor of granting class counsel's request for a fee of one-third of the total settlement fund": the benefit conferred on the class; the risk to which plaintiffs' counsel was exposed; the difficulty and novelty of the legal and factual issues of the

---

[1] Those factors that *may* be relevant for the Court to consider include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Fellows*, 2018 WL 3056046, at *4–5.

case; the skill of the lawyers, both plaintiffs' and defendants'; counsel's time and labor involved; and, the comparison between the requested attorney fee percentage and percentages awarded in similar cases. Similarly, in *Huyer v. Buckley*, 849 F.3d 395, 399-400 (8th Cir. 2017), in affirming the one-third attorney fee award approved by the district court in a class action settlement, the appellate court pointed to factors such as: the time and work required by counsel; the preclusion of other employment by counsel due to acceptance of this case; the contingent nature of the fee; the results obtained; and the experience, reputation and ability of the attorneys.

Here, analysis of relevant *Johnson* factors fully supports Plaintiffs' request for a one-third fee from the common settlement fund:

<u>Time and labor required</u>. This litigation started five years ago when, in July 2014, Plaintiffs' counsel first met with Sandra Drake and Randy Smith to begin investigating potential pay violations at Steak N Shake. Following significant investigation and research, the lawsuit was initiated in September 2014. As the Court is well-aware, this litigation has involved a tremendous amount of time and work on behalf of Plaintiffs' counsel. To date, there have been: 28 extensive depositions taken (each requiring significant preparation and often travel); voluminous pleading practice (several hundred filings on the docket); over 22,000 pages of documents produced by Defendant and reviewed by Plaintiffs' counsel; motions regarding collective and class certification and decertification; motions for summary judgment filed by both sides; discovery to all collective class members; expert witness reports and testimony; and ultimately a seven-day jury trial before this Court.

In short, and as reflected in the timesheets previously submitted to the Court in support of the post-trial award of fees in *Drake*, Plaintiffs' counsel have expended a massive amount of time and labor pursuing this litigation over the past five years. Plaintiffs' counsel have also

5

expended hundreds of hours on the *Clendenen* matter. These five years of time and labor have ultimately benefitted the class members in both cases with the favorable settlement ultimately reached. *See*, Donelon Declaration, ¶¶ 6-8; Dundon Declaration, ¶ 8.[2]

Novelty and difficulty of the questions. The legal issue in this litigation was seemingly straightforward: whether class member Managers were legally classified as exempt under the executive, administrative, and/or combination exemptions to overtime pay under the FLSA. While the issue itself may not have been overly "novel," resolving it presented great difficulty.

First, Defendant adamantly fought class treatment of these claims by insisting on conducting significant discovery (presumably to uncover "dissimilarities"), and then by opposing class certification and seeking decertification. Second, Defendant steadfastly maintained that the exempt classifications were legal and refused to concede otherwise. Discovery uncovered corporate documents evidencing that class members were instructed that their primary duties as Managers are to be exempt in nature. Class members acknowledged these directives by regularly signing forms "certifying" they understood exempt work was to be their "primary duty" (and to contact upper management if they were not). As a result, establishing that the class members' primary duty was really nonexempt work proved to be challenging. Counsel needed to get deep into the weeds of the exemptions and the specific facts related to class members' actual job duties. Although Defendant had the burden of proof at trial, class counsel effectively had to convince the jury that nonexempt work was the Managers' primary duty. Plaintiffs were going to face these same battles again in *Clendenen*. Even after obtaining the jury verdict in *Drake* and convincing Defendant to mediate, the settlement process required significant effort and deft negotiations. *See*, Donelon Declaration, ¶¶ 7-8; Dundon Declaration, ¶¶ 7-9.

---

[2] The Donelon and Dundon declarations have been filed under seal with the Court as they contain sensitive and confidential information.

<u>The skill requisite to perform the legal service properly</u>.  Because resolving the class members' exempt status was difficult and time-consuming, a tremendous degree of skill and legal acumen was necessary to achieve a successful result.  It was critical that Plaintiffs' counsel had significant expertise in litigating and trying FLSA exemption class action cases.  Because counsel has such expertise, counsel was able to properly investigate the viability of the potential case; adequately plead the cause of action (and defeat Defendant's subsequent motion to dismiss); properly prepare the class members for their depositions (such that they appreciated the nuances of the FLSA exemptions); defeat Defendant's motions for decertification and summary judgment (while obtaining Rule 23 certification); and, achieve a unanimous jury verdict in Plaintiffs' favor at trial.  In *Clendenen*, Plaintiffs' counsel was repeating the same successes.  In short, successfully handling this litigation from initiation through trial and settlement required a high degree of legal skill on the part of counsel.  Very few law firms have this skill and experience.  *See*, Donelon Declaration, ¶ 3.

<u>The preclusion of employment by the attorney due to acceptance of the case.</u>  Plaintiffs' counsel is a two-attorney law firm.  As a result of accepting this case and putting in the necessary time and effort, counsel was precluded from accepting other potentially lucrative cases over the past five years.  This is because a substantial majority of counsel's overall time over these past five years has been dedicated to prosecuting this particular litigation.  *See*, Donelon Declaration, ¶¶ 1; 11.  In return for taking this significant risk, awarding a benefit of the fund percentage fee is most appropriate.

<u>The customary fee and whether the fee is fixed or contingent</u>.  As discussed above, one-third fees in common fund settlements are customary.  Counsel took this case, as it does in all cases, solely on a contingency (no-recovery, no-fee) basis with the real possibility of an

7

unsuccessful outcome and thus no fee of any kind.  Here, the Plaintiff-class representatives in both cases contractually agreed to a 35% contingency fee.  Importantly, at the time this litigation was commenced in 2014, there were no indications that a settlement would be reached or that the litigation would be successful.  In fact, throughout the first four-plus years of litigation, Defendant refused to mediate or even discuss potential resolution in *Drake* or *Clendenen*.  Defendant only agreed to mediate after Plaintiffs' counsel had obtained a successful jury verdict in *Drake*.  As is the risk associated with pure contingency-based fees, undersigned counsel has the unfortunate experience of working cases (sometimes for years) where no fee was ultimately received due to the speculative nature of the fee agreements.  In fact, in this case the possibility of little to no recovery was quite possible.  *See*, Dundon Declaration, ¶ 8.  However, these are the fee agreements counsel and aggrieved claimants must enter into, as the typical employee could never afford to pay for legal services on an hourly basis regardless of the outcome.  *See*, Donelon Declaration, ¶ 11.

      The amount involved and the results obtained.  This was a hard-fought litigation that required a significant amount of work on various legal fronts: pleading practice, discovery and depositions, legal analysis, trial advocacy, and settlement negotiations.  Plaintiffs' counsel was able to defeat all of Defendant's substantive motions to dismiss, for summary judgment, and for class decertification.  Most importantly, Plaintiffs' counsel obtained a unanimous jury verdict on behalf of the class members at trial as to all liability and damages issues.  Following trial, Plaintiffs' counsel had to engage in difficult and precarious settlement negotiations in order to secure a fair recovery for the class members.  Given Defendant's financial circumstances, this settlement is pragmatic and reasonable.  Of most importance, counsel was able to negotiate for Defendant's parent corporation to be legally obligated for payment of the settlement fund.  *See*,

Donelon Declaration, ¶¶ 6-8; Dundon Declaration, ¶¶ 7-9. And while it is a compromised result, the settlement nevertheless is still in excess of eight million dollars and provides meaningful and certain benefit to all class members. "As courts routinely recognize, a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate." *Keil v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017) (internal quotations omitted). This settlement would not have been achieved but for class counsel's successes throughout the litigation, including – and especially – at trial.

<u>The experience, reputation, and ability of the attorneys</u>. Donelon, P.C. brings a high level of skill, experience, and success in litigating wage and hour class actions. *See, Drake* Doc. 337. This practice has been almost exclusively dedicated to FLSA related overtime pay law for over ten years. Attorneys Donelon and Craig each have 24 years of experience as litigators and trial attorneys – the majority of it spent on employment and labor matters in federal courts throughout the country. Unlike many other FLSA-focused attorneys, Donelon, P.C. has experience litigating these types of cases to a jury verdict. Donelon, P.C. also has substantial experience handling FLSA overtime pay cases before various circuit appellate courts across the country. Having both trial and appellate experience in FLSA overtime pay matters contributes significantly to ultimately being able to obtain successful results for class members. This greatly contested case required such experience. *See*, Donelon Declaration, ¶¶ 1-3.

Defense counsel was also a worthy adversary. Throughout this litigation, Defendant was represented by two of the largest employment-defense law firms in the nation. Defendant's attorneys are skilled and experienced in overtime pay class action litigation and trial. Defense counsel ably and aggressively represented Defendant. Obtaining the favorable jury verdict and subsequent settlement reflects well on class counsel's ability.

9

### III. The Litigation Expenses Sought are Reasonable.

Plaintiffs' counsel seeks approval of $257,678.00 for litigation expenses. These expenses include filing and service costs, deposition costs, copying costs, class mailing costs, expert witness fees, travel costs, mediation costs, and professional consultancy fees. An itemization of these expenses is attached to the Donelon Declaration. These expenses were all necessary in order to adequately prosecute this litigation and obtain the fair settlement on behalf of the class members. These expenses are reasonable for such a prolonged and contested litigation and should be paid out of the common settlement fund. *See*, Donelon Declaration, ¶¶ 12-13.

> Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of- pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses.

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634–35 (W.D. Ky. 2006), aff'd sub nom. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1067 (D. Minn. 2010) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement."); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund.").

As reflected in the itemization provided to the Court, approximately half of the litigation expenses are for the fees of Dundon Advisers, LLC. As contractually agreed with Plaintiffs' counsel on behalf of the class members, Dundon's contingency fee was for 1.5% of the gross settlement amount, which here is $125,250.00 (1.5% of $8,350,000.00). It is undersigned

counsel's professional opinion that these fees were absolutely necessary to achieve ultimate success in this matter. In fact, counsel is of the opinion that without Dundon's assistance, there likely would be no settlement for the Court to consider given the Defendant's current financial circumstances. In order to resolve these cases and to ensure a fair and *certain* recovery for class members, Plaintiffs and their counsel needed highly qualified experts in corporate finance, structured debt, and restructuring issues to provide guidance. Dundon amply provided that assistance. This assistance continues with the related settlement paperwork and process. Counsel also believes that Dundon's fees for providing its assistance are fair and reasonable given that their firm took on the same risk experienced by class counsel. *See*, Donelon Declaration, ¶¶ 9-10; Dundon Declaration, ¶¶ 7-11.

Finally, expert consultant percentage fees such as Dundon's are properly paid out of common fund settlements as part of litigation costs. *See, e.g.,* Orders attached to Dundon declaration; *see also*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) (finding and approving fees of "economic expert consultant" as "reasonable litigation expenses incurred for the benefit of the class"); *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 472 (S.D. W.Va. 2010) (approving fees to "experts and consultants," finding that "[s]uch experts were clearly necessary to the thorough development and effective settlement of the Class Claims, especially in light of the subject matter underlying this case.").

### IV.   The Costs to Administer the Settlement are Reasonable.

Plaintiffs' Counsel has retained Simpluris, Inc. as the third-party settlement administrator. Simpluris will be responsible for administering the Gross Settlement Fund. This includes determining and processing all payroll taxes for class members' settlement checks, issuing all settlement checks, responding to class member queries, and issuing all IRS forms W2

and 1099 to class members. The total cost for their services is $12,675.00. These administration costs are a necessary and reasonable part of properly making payments to the class members. Simpluris is also assisting the Parties in locating the most current addresses for class members if necessary. Counsel believes that this cost is fair and reasonable. *See*, Donelon Declaration, ¶ 13. Moreover, it is proper to include the class administration costs in the common fund from which the attorney's percentage-based fee is calculated. *See, e.g., Keil v. Lopez*, 862 F.3d 685, 703 (8th Cir. 2017) ("[T]he rule in this circuit is that a district court may include fund administration costs as part of the 'benefit' when calculating the percentage-of-the-benefit fee amount.").

### V. The Requested Service Awards for the Class Representatives and Certain Participating Class Members are Reasonable.

Plaintiffs respectfully request that this Court approve service awards for the class representatives and certain participating class members as reflected in Exhibit 4 attached to the Donelon Declaration. Specifically, Plaintiffs request service awards of: $10,000 to each *Drake* class representative; $5,000 to each *Clendenen* class representative; $5,000 to each *Drake* trial witness and litigation deponent; and, $500 to each *Drake* litigation deponent class member.

"Courts routinely grant service awards in connection with class action settlements to promote the public policy underlying class action litigation by encouraging individuals to vindicate rights on behalf of others similarly situated." *Fellows,* 2018 WL 3056046, at *6. In the Eighth Circuit, the relevant factors to analyze in deciding whether a plaintiff's proposed service award is warranted are: "(1) actions the plaintiffs took to protect the class's interests; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the plaintiffs expended in pursuing litigation." *Caligiuri v. Symantec Corp.,* 855 F.3d 860, 867 (8th Cir. 2017). Analyzing these factors here supports approving the requested service awards.

In the *Drake* matter, named-Plaintiffs and class representatives Drake and Smith made significant contributions to the litigation. Without their valuable assistance and participation, this case would not have been initiated and been successful. This was not a situation where clients hire an attorney and then passively step aside while the work is being done. Drake and Smith jointly contacted and met with undersigned counsel, bringing forward their concerns of potential pay violations. In the initial meetings, Drake and Smith made it clear that they wanted to proceed on behalf of *all* Managers, not simply on their own behalf. It was critically important for counsel to fully understand the specific facts relating to the job duties of Managers and the restaurant structure at SnS before initiating litigation. Drake and Smith amply provided that necessary information. *See*, Donelon Declaration, ¶ 14.

Drake and Smith further met with counsel, both personally and via phone, on *many* occasions throughout this litigation to discuss various aspects of the case necessary to its prosecution. They met with counsel to review and approve the initiating Complaint; obtained information when requested; assisted with discovery; sat for day long depositions; assisted with and attended the jury trial in this matter, including testifying; and, they made settlement decisions with the best interests of the class members in mind. In short, this case would have never originated, and this settlement would ultimately have never been obtained for the class members, but for Drake's and Smith's initiative and efforts. *Id.*

Also in the *Drake* matter, other class members provided meaningful assistance to the litigation. Class members Frost, Intravaia, Trautwein, and Williams all willingly testified live at the *Drake* trial. Prior to this testimony, all four class members expended considerable time and effort reviewing material and preparing with undersigned counsel. Their testimony at trial was extremely important and they undertook their responsibilities seriously. Moreover, during

13

discovery, all four were required to respond to a questionnaire created by Defendant and had to prepare and sit for day long depositions. Finally, twelve other *Drake* class members also had to respond to Defendant's questionnaire and prepare and sit for day long depositions. Their participation greatly helped in obtaining and maintaining class status. *Id*.

In *Clendenen*, named-Plaintiffs Clendenen and Piccolomini also provided meaningful contributions to the litigation. Without their willingness to be named-Plaintiffs, there would be no recovery for the 426 Managers who opted-in to that case. Clendenen and Piccolimini both expended time and effort meeting with counsel and helping them shape and initiate this litigation. They also stood ready to provide any additional assistance that could be requested. Finally, they both made settlement decisions with the best interests of the class members in mind. *See*, Donelon Declaration, ¶15.

The service awards sought here are all well within the service awards that have been approved in other class action cases in the Eighth Circuit and this District.

> Courts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits …. [C]ourts in this circuit regularly grant service awards of $10,000 or greater.

*Caligiuri v. Symantec Corp.,* 855 F.3d 860, 867 (8th Cir. 2017) (affirming service award of $10,000 and citing cases approving awards between $10,000 and $17,000); *Tussey, et al. v. ABB, Inc., et al.* 850 F.3d 951, 961-62 (8th Cir. 2017) (affirming $25,000 service awards to be paid from common class fund); *Rawa v. Monsanto Co.*, 2018 WL 2389040, at *9 (E.D. Mo. May 25, 2018) (approving service award of $10,000); *Lees v. Anthem Ins. Companies Inc.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (finding $10,000 service award to be "fair and reasonable"). It is worth noting that this matter was litigated more extensively than the cases cited above.

14

As final support for the awards to the four named Plaintiffs, given the internet age we live in, the names of Drake, Smith, Clendenen, and Piccolomini will forever readily appear as individuals who sued their employer.  Almost all employers today conduct a background check of some sort of job applicants.  From this point forward, any time these four individuals seek employment it is very likely these cases will come up.  This will reflect on them as persons willing to bring suit against an employer.  There can be no doubt that this could affect future employment opportunities.  None of the other class members have incurred this named-plaintiff stigma, yet they all will benefit with wage payments.  *See*, *e.g.*, *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (recognizing the propriety of service awards, for "without a named plaintiff there can be no class action," and hence serving in that capacity "confer[s] a benefit on the (other) beneficiaries of the common fund.").

Respectfully submitted,

Brendan J. Donelon, MO #43901
420 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:    (816) 221-7100
Fax:    (816) 709-1044
brendan@donelonpc.com

*/s/ Daniel W. Craig*
Daniel W. Craig, MO #43883
6614 Clayton Rd., #320
St. Louis, Missouri 63117
Tel:    (314) 297-8385
Fax:    (816) 709-1044
dan@donelonpc.com

ATTORNEYS FOR PLAINTIFFS

## Certificate of Service

Plaintiffs hereby certify that the foregoing was sent on July 22, 2019 to the email addresses for defense counsel of record per the requirements of this Court's CM/ECF practices and procedures.